2023 IL App (1st) 220888-U

No. 1-22-0888

Order filed June 21, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| STEADFAST INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and Counter-Defendant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 13772 |
| | ) | |
| STATE PARKWAY CONDOMINIUM ASSOCIATION, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendant-Appellant and Counter-Plaintiff. | ) | Judge, presiding. |
| | ) | |
| (Lieberman Management Services, Inc., Donna Weber, | ) | |
| Michael J. Novak, Christina Bugelas Novak, and T.N., by | ) | |
| her Parent and Next Friend MJN, Defendants) | ) | |
| | ) | |
| | ) | |
| STATE PARKWAY CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| Third-Party Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY | ) | |
| OF AMERICA, AMERICAN INTERNATIONAL | ) | |
| SPECIALTY LINES INSURANCE COMPANY, | ) | |
| HARLEYSVILLE LAKE STATES INSURANCE | ) | |

COMPANY, STRATHMORE INSURANCE )
COMPANY, AMERICAN AUTOMOBILE INSUANCE )
COMPANY, )
)
      Third-Party Defendants-Appellees. )

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm the circuit court's orders holding that plaintiff and third-party defendant insurers have no duty to defend or indemnify defendant and third-party defendant insured in the underlying litigation, insurers are not estopped from raising policy defenses, and insured has no claim against insurers for vexatious or unreasonable delay under the Illinois Insurance Code.

¶ 2   This case involves an insurance coverage dispute. Appellant State Parkway Condominium Association (SPCA) seeks reimbursement, under various insurance policies, for amounts SPCA asserts it incurred in the defense and settlement of several administrative and civil proceedings pursued against it by a condominium unit owner, Michael J. Novak, and his family (collectively, the Novak Litigation) for, *inter alia*, alleged discriminatory and harassing conduct based on Novak's disability. Novak filed his first claim against SPCA in 2007; this and other claims continued for over a decade. As SPCA's primary insurer, third-party defendant and appellee Travelers Casualty and Surety Company of America (Travelers), provided a defense in the Novak Litigation. In 2017, however, Travelers informed SPCA that its $1 million coverage limit had been exhausted and withdrew its defense. SPCA then turned to its six other insurers, from which it had obtained commercial general liability and umbrella liability policies, to undertake its defense. Each insurer refused to defend or indemnify SPCA. A series of coverage actions followed in the state

and federal courts. In this case, SPCA appeals the circuit court's determination that none of SPCA's insurers in this action have an obligation to defend or indemnify SPCA in the Novak Litigation. For the reasons that follow, we affirm the circuit court's judgments.

¶ 3                                 I. BACKGROUND

¶ 4                         A. The Underlying Novak Litigation

¶ 5     SPCA, an Illinois non-for-profit corporation, is the association of owners of the condominium building located at 1445 North State Parkway in Chicago, Illinois. In January 2007, Novak filed a claim against SPCA with the Illinois Department of Human Rights (IDHR) (2007 IDHR Claim) alleging that SPCA failed to make reasonable accommodations for his hearing impairment at a January 2006 board meeting, including provision of hearing assistance through Communication Access Real-Time Translation (CART) services to communicate at association proceedings. Travelers defended SPCA in the proceedings, which were resolved through settlement on September 4, 2007.

¶ 6     In March 2008, SPCA filed a lawsuit which sought an injunction against Novak in the Chancery Division of the Cook County circuit court alleging violations of SPCA rules and regulations, including harassment (SPCA Chancery Lawsuit). In January 2009, Novak filed a counterclaim (Novak Counterclaim) alleging discriminatory and harassing conduct by SPCA, unit owners, board members, and by the on-site property manager Donna Weber (Weber), an employee of SPCA's management company Lieberman Management Services, Inc. (Lieberman Management). Novak set forth factual allegations of incidents starting from September 2007 through 2008 regarding his interactions with SPCA, Lieberman Management and Weber, and other unit owners related to his attempts to obtain books and records, bringing to light alleged accounting

discrepancies, and allegations of discriminatory or retaliatory conduct based on these efforts and due to his disability. Novak alleged violation of SPCA's rules and regulations, breach of the 2007 IDHR Claim settlement agreement, retaliation for filing the 2007 IDHR Claim, defamation, and intentional infliction of emotional distress. Novak later filed two amended counterclaims (Novak First Amended Counterclaim and Novak Second Amended Counterclaim, collectively, Novak Counterclaims). Travelers undertook defense of the Novak Counterclaims.

¶ 7    In his Second Amended Counterclaim, Novak added additional allegations of conduct through July 2009 that had occurred since his first counterclaim was filed. Novak brought the following counts: (1) four counts against SPCA for injunctive and compensatory relief regarding its alleged failure to comply with books and records inspections laws, and (2) one count of breach of fiduciary duty in refusing to respond to requests for documents, failing to consistently administer association rules, targeting Novak with additional rules and fees or penalties, retaliation against Novak, discrimination in failing to accommodate Novak's disability for board meetings, and failing to accommodate his service dog. Novak alleged he suffered "economic and emotional distress damage and harm to his person, family, and reputation." In 2016, the trial court dismissed with prejudice all but the breach of fiduciary duty count.

¶ 8    Novak filed a second housing discrimination complaint against SPCA in the IDHR in November 2010 (2010 IDHR Claim) again alleging, *inter alia*, disability discrimination, including, again, improper denial of CART services, retaliation for filing the 2007 IDHR Claim, refusal to acknowledge Novak's service dog, and improper attempts to terminate Novak's ownership of his condominium. Travelers undertook SPCA's defense against this claim.

¶ 9     Finally, in November 2013, Novak and his family filed a lawsuit in United States District Court for the Northern District of Illinois (Novak Federal Lawsuit). Novak named as defendants SPCA, Lieberman Management, Weber, and SPCA's law firm (later dismissed). Travelers undertook SPCA's defense in the Novak Federal Lawsuit. Novak's twelve-count complaint alleged claims of violation of fair housing laws and negligent and intentional infliction of emotional distress. Similar to previous filings, Novak alleged that after the settlement of 2007 IDHR Claim on September 4, 2007, Weber and SPCA engaged in numerous incidents of discriminatory, harassing, and retaliatory conduct. Novak reiterated allegations related to incidents that were part of the SPCA Chancery Lawsuit, Novak Counterclaims, and the 2010 IDHR Claim, alleging that the SPCA Chancery Lawsuit constituted malicious prosecution. They also alleged incidents of discrimination and harassment related to Novak's disability occurring through January 2013.

¶ 10    Various counts of the Second Amended Counterclaim and Novak Federal Litigation were dismissed in the ensuing years. Ultimately, in 2019, the parties settled the remaining claims in the underlying lawsuits, *i.e.*, the breach of fiduciary duty count against SPCA in the Novak Second Amended Counterclaim, and the federal housing law claims against Lieberman Management and Weber in the Novak Federal Lawsuit.[1]

---

[1] We note that Liberman Management and Weber are not parties to this appeal. The circuit court entered an order on May 29, 2020, granting Steadfast's motion to dismiss with prejudice its complaint as to Weber and Lieberman Management. The court also entered an order on June 4, 2020, granting Weber and Lieberman Management's motion to voluntarily dismiss with prejudice their claims against Steadfast, Travelers, AISLIC, Harleysville, Strathmore, and American Automobile. These orders are not at issue on appeal.

¶ 11                      B. Travelers' Defense of SPCA and Reservation of Rights Letters

¶ 12     Travelers provided insurance policies to SPCA beginning in May 2006 through May 2012, renewed annually. The policies contained the following "Related Wrongful Acts" provision:

> "Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more such Related Wrongful Acts is made against any of the Insureds[.]" (Emphasis omitted.)

¶ 13     Travelers began providing a defense for SPCA in the 2007 IDHR Claim under SPCA's Non-Profit Management and Organizational Liability Policy, effective May 30, 2006, to May 30, 2007 (2006-2007 Travelers Policy). Travelers sent SPCA a letter dated April 18, 2007 (April 2007 ROR Letter) advising that Travelers would provide SPCA with a defense under a full reservation of rights and agreeing to SPCA's request to retain SPCA's outside counsel for the defense. The letter stated that under the 2006-2007 Travelers Policy, a preliminary evaluation of Novak's claim indicated it constituted a "Claim" under the policy, but a definitive coverage evaluation would not be possible until all issues were resolved. The letter again advised that its defense was subject to a full reservation of rights, stating: "This means that coverage may be withdrawn if it is conclusively determined at a later date that no coverage exists for the matter under the Policy." Further, Travelers "reserve[d] its right to raise additional terms, conditions, and exclusions as defenses to coverage should they later be determined to apply." Travelers's letter advised that its limit of liability, including defense costs, was $1 million.

¶ 14     Following the filing of the Novak Counterclaim in the SPCA Chancery Lawsuit, Travelers sent another letter dated February 13, 2009 (February 2009 ROR Letter), providing SPCA with a preliminary evaluation that coverage for the Novak Counterclaim was afforded by the 2006-2007 Travelers Policy, with a $1 million coverage limit, including defense costs, and again agreed to appoint SPCA's outside counsel of choice to handle the defense. In the letter, Travelers recounted the claims and allegations made in the 2007 IDHR Claim and the Novak Counterclaim. Travelers stated that it determined that the 2007 IDHR Claim and the Novak Counterclaim constituted "Related Wrongful Acts" under the policy. The letter also cited at length other policy exclusions that may apply. Further, the letter advised that there may be other insurance policies which provide primary or secondary coverage for the claim, and requested SPCA to advise Travelers what other policies exist, what steps have been taken to notify those insurers, and what their responses have been. Similar to its previous letter, Travelers stated that it was providing a defense under a "full reservation of rights, including but not limited to those stated above," that its duty to defend "may be extinguished at some point in the future if it is determined conclusively that no coverage exists for this matter under the Policy," and that it "reserve[d] it[s] right to raise additional terms, conditions and exclusions as defenses to coverage should they later be determined to apply."

¶ 15     After Novak filed the First Amended and Second Amended Counterclaims in the SPCA Chancery Lawsuit, Travelers sent SPCA another letter, dated October 22, 2009 (October 2009 ROR Letter). Travelers, through its claim representative, Melissa Morin, wrote that coverage for the claims set forth in the Second Amended Counterclaim was being afforded under the Travelers' policy that was effective from May 30, 2009, to May 30, 2010 (2009-2010 Travelers Policy), which had a $2 million limit. The letter stated, however, "[w]ith respect to this particular loss,

please be advised that Endorsement 72028 limits coverage to $1,000,000.00 for any Claims involving Michael Novak." Travelers stated that it would like to appoint Litchfield Cavo LLP ("Litchfield Cavo") to handle the defense, upon approval by SPCA. Similar to its prior letters, Travelers advised that it was providing coverage under a full reservation of rights and that its duty to defend may be extinguished in the future if it was determined that no coverage exists. It again advised that SPCA should investigate whether additional coverage with other insurers was available and inform Travelers of their response. As with prior letters, it noted several policy exclusions that may apply and stated that Travelers:

"continues to fully reserve all rights, remedies, and defenses in this matter, including *** the right to raise any additional terms, conditions and exclusions as defenses to coverage should they be determined to apply. Neither this letter, nor any actions by Travelers or any of its agents, shall constitute, or be deemed a waiver, estoppel, admission or liability or prejudice of any kind to Travelers' rights and defenses under the Policy, by law, or otherwise."

¶ 16    Following the filing of the Novak 2010 IDHR Claim, Travelers sent SPCA a letter dated December 6, 2010 (December 2010 ROR Letter) from claim representative Morin. Travelers wrote that its initial coverage analysis indicated that the allegations in the 2010 IDHR Claim were substantially similar to those in the Novak Counterclaims. Travelers advised that although the 2009-2010 Travelers Policy had a $2 million aggregate coverage limitation, "[w]ith respect to this particular loss, please be advised that Endorsement 72028 limits coverage to $1,000,000.00 for any Claims involving Michael Novak." The letter stated that Travelers would like to continue retaining Litchfield Cavo for the defense. As in prior letters, Travelers outlined several exclusions

that might apply, stated that it was defending under a full reservation of rights, that its duty to defend may be extinguished in the future if it was determined that no coverage existed, and that SPCA notify it if other insurance policies may apply. Travelers advised that it:

"continues to fully reserve all rights, remedies, and defenses in this matter, including but not limited to the right to raise additional terms, conditions and exclusions as defenses to coverage should they later be determined to apply. Neither this letter nor any actions by Travelers or any of its agents, shall constitute, or be deemed a waiver, estoppel, admission or liability or otherwise prejudice of any kind to Travelers's rights and defenses under the Policy, by law, or otherwise."

¶ 17    On October 4, 2017, Travelers sent SPCA a letter informing it that Travelers' payments in connection with the Novak claims had exceeded the applicable $1 million limit of the 2006-2007 Travelers Policy, and that Travelers had paid over $1,085,000 in defense costs (Travelers Coverage Exhaustion Letter). The letter, from Senior Claim Representative Rachel Plzak, reviewed the history of the Novak claims starting from the 2007 IDHR Claim through the Novak Federal Lawsuit. Plzak indicated that the 2006-2007 Travelers Policy contained a maximum limit of liability for all claims of $1 million, and that this policy was renewed in subsequent policy periods. The letter stated that when Novak filed the 2007 IDHR Claim, Travelers assigned the matter a claim number under the 2006-2007 Travelers Policy, and the Novak Counterclaims were treated as Related Wrongful Acts and the same Claim under the 2006-2007 Travelers Policy. The letter acknowledged that in subsequent communications, Travelers had referred to the 2009-2010 Travelers Policy and handled the matter under that policy with a different claim number. Travelers explained that because all Wrongful Acts alleged in the various Novak claims constituted Related

Wrongful Acts under the policy, all claims in the Novak Litigation should have been handled under the 2006-2007 Travelers Policy. As such, all claims in the Novak Litigation were considered a single Loss incurred as a result of a single Claim. Because the $1 million policy limit was exhausted, Travelers advised SPCA that no further coverage was available for the Novak Litigation, and it had no further duty to defend SPCA.

¶ 18                    C. Deposition Testimony and Documentary Evidence

¶ 19    Mary Marta, a board member of SPCA since 2002 and board president during the time period of the Novak Litigation, testified in her deposition that she was involved in communications with Travelers regarding coverage of the litigation, but had no knowledge of the reservation of rights letters from Travelers, which she believed Lieberman Management was responsible for receiving. She periodically inquired about the current level of exhaustion of coverage for the Novak Litigation that had been spent on defense costs. At a settlement conference in 2013 related to the Novak claims in state court, Marta was "made aware that our coverage in legal fees was $1 million dollars." Marta testified that, at a private mediation at their attorney's office, Travelers' claim counsel Morin informed her that the Travelers' policy limit for the Novak Litigation was $1 million. At a federal court settlement conference in 2015, Marta was not advised of anything to the contrary regarding the $1 million limitation. Marta testified that, after Novak proposed a $4.9 million settlement demand at a federal court mediation, SPCA discussed at board meetings the total amount spent by Travelers thus far, the amount Novak demanded, and how the Novak Litigation could be settled for a reasonable amount, such as by purchasing Novak's condominium unit from him. In May 2015, Morin informed her that Travelers had spent $400,000 on defense costs to date. Marta testified that she sent an email to Morin in September 2016 again requesting

the total amount spent by Travelers for the Novak Litigation because she "need[ed] to make our owners aware of the fact that the association may have to cover the legal expenses when the policy limit has been reached." Morin responded that $700,000 had been expended. Marta understood the policy limit to be $1,000,000 at the time. Marta testified that SPCA was creating its annual budget and it was setting aside funds for the contingency that the $1 million coverage limit would be exhausted and unit owners would have to pay legal fees.

¶ 20    According to Travelers' claim counsel Morin, she discussed the $1 million coverage limit and how much had been spent on defense costs with Marta throughout the course of various mediation sessions and telephone calls between 2013 and 2015. Similar to Marta's testimony, Morin testified that, during a mediation in 2013, Morin discussed defense costs and settlement costs with Marta. Morin testified that at a federal court settlement conference in 2015, Morin discussed with Marta that Travelers' coverage limit for the Novak Litigation was $1 million, the total amount Travelers had expended on defense costs to date, and the fact that the defense costs "were coming off the million." She testified that Marta was "in agreement" and "really focused on how much is remaining because they knew it was a self-liquidating policy."

¶ 21    Weber, the on-site manager at the condominium building from 2007 through 2015, testified that she had no knowledge of any reservation of rights letters, she never heard that any amount in excess of $1 million was available under Travelers' policy, and she never believed that more than $1 million in coverage was available.

¶ 22                    D. Procedural History Related to the Instant Case

¶ 23    After Travelers withdrew from SPCA's defense in the Novak Litigation, the SPCA looked to its other insurers to undertake its defense: American International Specialty Lines Insurance

Company (AISLIC), American Automobile Liability Insurance Company (American Automobile), Harleysville Lake States Insurance Company (Harleysville), Steadfast Insurance Company (Steadfast), Strathmore Insurance Company (Strathmore), and Great American Insurance Company (Great American). According to SPCA, when they refused to provide coverage, SPCA imposed a special assessment on its members and allegedly incurred approximately $260,000 in defense costs, in addition to the undisclosed settlement amount SPCA incurred in settling the Novak Litigation in 2019.

¶ 24    In 2017, after Travelers informed SPCA that its coverage had been exhausted, Great American instituted a federal declaratory judgment action (Federal Coverage Case) against SPCA, Lieberman Management, and Weber in the United States District Court for the Northern District of Illinois, seeking a declaration that it did not owe any coverage in the Novak Litigation. The SPCA filed a counterclaim against Great American, and a third-party complaint against Travelers, AISLIC, Harleysville, and Steadfast, seeking a declaration of coverage.

¶ 25    Travelers moved for partial judgment on the pleadings. *Great American Insurance Co. v. State Parkway Condominium Assoc.*, 2018 WL 4333623 (N.D. Ill. Sep. 11, 2018). The federal court found that, under the terms of Travelers' policy, the Novak Litigation arose from Related Wrongful Acts, constituting a single Claim first made with the 2007 IDHR Claim. *Id.* In January 2019, SPCA, Lieberman, and Great American dismissed their respective claims against each other without prejudice; as such, the federal court determined it no longer had diversity jurisdiction over the case and dismissed the case without prejudice on March 22, 2019.

¶ 26    Prior to dismissal of the Federal Coverage Case and shortly after Travelers sent the October 4, 2017, Coverage Exhaustion Letter, Steadfast initiated the instant case on October 13, 2017, in

the Cook County circuit court. Steadfast sought a declaration that it had no duty to defend or indemnify SPCA in the Novak Litigation. This action was stayed pending resolution of the Federal Coverage Case. Upon dismissal of the latter, litigation in the instant case resumed. SPCA filed a counterclaim against Steadfast and a third-party complaint against Travelers, AISLIC, Harleysville, and Strathmore, seeking a declaration that the insurance companies were obligated to defend or indemnify SPCA in the Novak Litigation.[2]

¶ 27    Following various motions to dismiss, SPCA filed a first amended counterclaim and an amended third-party complaint. On July 21, 2020, SPCA filed a second amended third-party complaint (SATC), which, *inter alia*, added American Automobile as a third-party defendant.

¶ 28    1. SPCA's Claims Against Travelers

¶ 29    In its SATC, SPCA brought three counts against Travelers: (1) breach of contract for abandoning its defense in the Novak Litigation, (2) waiver of/estoppel from asserting that only $1 million coverage was available and that the Related Wrongful Acts limitation applied, and (3) costs and fees under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)) for vexatious and unreasonable conduct and delay related to its defense. Travelers filed a counterclaim seeking a declaration that the claims in the Novak Litigation were Related Wrongful Acts, thus constituting a single Claim resulting from a single Loss, and the single Claim was first made in January 2007, when the 2006-2007 Travelers Policy was in effect.

¶ 30    Travelers moved to dismiss SPCA's section 155 claim pursuant to section 2-615(a) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(a) (West 2020)). In granting the motion on

---

[2] Great American was not named as a third-party defendant in the SPCA's state court third-party complaint and is not a party in this case.

March 20, 2020, the trial court determined that there was a *bona fide* dispute regarding coverage, precluding application of the statute.

¶ 31    Travelers later filed a motion for partial judgment on the pleadings pursuant to section 2-615(e) (735 ILCS 5/2-615(e) (West 2020)) seeking a declaration that the claims in the Novak Litigation constituted Related Wrongful Acts. SPCA filed a motion for partial summary judgment on the same issue, seeking the opposite declaration.

¶ 32    On January 26, 2021, the circuit court granted Travelers' motion. The court found that (1) the underlying pleadings in the Novak Litigation and SPCA's own admissions demonstrated that Novak's claims against SPCA all arose out of the 2007 IDHR Claim, and all of the claims constituted Related Wrongful Acts under the Travelers policy; (2) the pleadings demonstrated that SPCA was aware of the 2007 IDHR Claim and the alleged retaliation against Novak for filing the claim; and (3) the Novak Litigation constituted a single Claim first made in January 2007; (4) Travelers was entitled to partial summary judgment on the pleadings "in the form of a declaration that the Novak Litigation constitutes a single claim resulting in a single loss arising from 'related wrongful acts' and that single claim was made in January of 2007"; and (5) only the 2006-2007 Travelers Policy applied.

¶ 33    Following discovery on SPCA's remaining claim—the waiver/estoppel count—the parties filed cross-motions for summary judgment. On March 28, 2022, the circuit court granted Travelers' motion for summary judgment as to Travelers' counterclaim and SPCA's waiver/estoppel claim. The circuit court found that SPCA did not establish waiver or estoppel as a matter of law and Travelers had no further coverage obligation for the Novak Litigation after exhaustion of the $1 million in coverage under the 2006-2007 Travelers Policy.

¶ 34    2. SPCA's Claims Against AISLIC

¶ 35    AISLIC issued three umbrella insurance policies between 2006 and 2009 that provided commercial general liability coverage, including limited, claims-made director and officer umbrella coverage (AISLIC Umbrella Policies). SPCA alleged three counts against AISLIC in the SATC. In count IV, SPCA asserted breach of contract, alleging that the claims that remained pending at the time—the Novak Second Amended Counterclaim and the Novak Federal Lawsuit— fell within the policy coverage, and AISLIC was obligated to undertake its defense after SPCA. In count V, SPCA asserted that AISLIC should be estopped from asserting any defenses because it breached its duty to defend SPCA and failed to seek a declaration of rights. In count VI, SPCA sought imposition of fees and costs under section 155 of the Illinois Insurance Code.

¶ 36    AISLIC moved to dismiss the claims against it pursuant to section 2-619.1 of the Illinois Code of Civil Procedure. (735 ILCS 5/2-619.1 (West 2020)). On May 27, 2022, the circuit court entered judgment in favor of AISLIC and dismissed counts IV-VI with prejudice. The court found that (1) SPCA was not entitled to commercial general liability or director and officer umbrella coverage under the AISLIC Umbrella Policies, (2) SPCA had no claim for estoppel where no coverage was owed, and (3) SPCA failed to state a claim under section 155 because there was a *bona fide* dispute over coverage.

¶ 37    3. SPCA's Claims Against American Automobile

¶ 38    American Automobile provided a commercial general liability insurance policy effective May 30, 2006 to May 30, 2007 (American Automobile Policy). Similar to its claims against AISLIC, SPCA asserted three counts against American Automobile in the SATC. Count VII alleged breach of contract for failure to undertake SPCA's defense in the Novak Litigation

pursuant to the American Automobile Policy. Count VIII asserted that American Automobile was estopped from asserting any policy coverage defenses. Count IX raised a claim under section 155 of the Illinois Insurance Code.[3]

¶ 39    American Automobile filed a motion under section 2-615(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2020)). The circuit court granted the motion on June 28, 2021, finding that American Automobile received late notice of the Novak claims, SPCA failed to provide notice pursuant to the policy requirements, that the Novak Litigation was not covered by the American Automobile Policy, and that SPCA could not maintain an estoppel claim or seek sanctions under section 155 of the Illinois Insurance Code.

¶ 40    4. SPCA's Claims Against Harleysville

¶ 41    Harleysville issued a commercial general liability policy to SPCA effective from May 1, 2007, to May 1, 2008 (Harleysville Policy). Harleysville filed a motion to dismiss after each iteration of SPCA's third-party complaint.

¶ 42    Ultimately, in the SATC, SPCA asserted similar claims against Harleysville as against its other secondary insurers. In count X, SPCA alleged breach of contract for refusing to undertake SPCA's defense pursuant to the Harleysville Policy. SPCA asserted in count XI that Harleysville should be estopped from denying coverage because it failed to defend SPCA or file a declaratory judgment action. In count XII, SPCA again claimed costs and fees under section 155 of the Illinois Insurance Code.

---

[3] We note that SPCA did not name American Automobile as a third-party defendant in the Federal Coverage Case. American Automobile contended it was not given notice of the Novak Litigation until November 2018. It pursued a declaratory judgment action in federal court in March 2019, to which SPCA challenged jurisdiction and filed a third-party complaint against American Automobile. American Automobile subsequently dismissed its case.

¶ 43    Harleysville filed a motion to dismiss the SATC pursuant to sections 2-615 and 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619(a)(9) (West 2020)), based on failure to provide proper notice under its policy.

¶ 44    The circuit court granted Harleysville's motion to dismiss with prejudice on October 3, 2020, holding that SPCA failed to plead any facts demonstrating that it provided the notice required by the Harleysville Policy. Further, estoppel did not apply where the alleged facts demonstrated that Harleysville had no reasonable opportunity to file a declaratory action before SPCA filed its own action. The court also determined SPCA's section 155 claim failed as a matter of law because a *bona fide* dispute as to coverage existed.

¶ 45    5. SPCA's Claims Against Steadfast

¶ 46    Steadfast issued a commercial general liability policy effective from May 1, 2008, to May 1, 2009 (Steadfast Policy). In Steadfast's October 13, 2017, declaratory action against SPCA, it sought a declaration of no coverage or duty to defend on three grounds: (1) the Novak Second Amended Counterclaim and the Novak Federal Action did not allege bodily injury, property damage, personal injury, or advertising injury within the terms of the policy, and that such conduct fell within the scope of the "expected or intended injury exclusion" in its policy; (2) coverage was excluded based on the "continuing claim exclusion" in the policy; and (3) SPCA failed to comply with the notice provision in the policy.

¶ 47    As to Steadfast, SPCA asserted in its first amended counterclaim (1) breach of contract for failing to defend SPCA, and (2) costs and fees under section 155 of the Illinois Insurance Code.

Additionally, SPCA raised the affirmative defenses of estoppel and waiver based on Steadfast's alleged breach of its duty to defend SPCA.[4]

¶ 48    Steadfast moved to dismiss the section 155 claim. The circuit court granted this motion in a written order on March 12, 2020. Steadfast subsequently moved for judgment on the pleadings as to the remaining issues. The court granted Steadfast's motion on January 26, 2021, finding that the "continuing claim exclusion" in the policy eliminated any duty to defend or indemnify, and that, as a matter of law, SPCA failed to provide the required notice under Steadfast's policy. Accordingly, Steadfast's contractual duties under the policy were not triggered. The court found that waiver and estoppel did not apply because Steadfast had promptly filed its declaratory judgment action and Steadfast had no duty to defend SPCA.

¶ 49    6. SPCA's Claims Against Strathmore

¶ 50    Strathmore issued commercial general liability policies to SPCA from May 1, 2009, through May 1, 2012 (Strathmore Policies). Similar to its claims against other insurers, SPCA asserted in count XIII of the SATC, breach of contract in refusing to undertake its defense in the Novak Second Amended Counterclaim and the Novak Federal Lawsuit; in count XIV, estoppel from raising any policy defenses; and in count XV, penalties and fees under section 155.

¶ 51    Strathmore filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2020)). The circuit court granted Strathmore's motion on October 1, 2020.

---

[4] We note that SPCA also raised the affirmative defenses that (1) a determination regarding Steadfast's duty to indemnify was premature, and (2) it was improper for the court to determine any facts in the case that were at issue in the Novak Litigation, but neither of these are at issue on appeal as they were later rendered moot.

¶ 52   The circuit court's order on May 27, 2022, related to AISLIC, resolved the final pending claim in the case, rending the matter final and appealable. SPCA filed a notice of appeal from each of the dispositive orders.

¶ 53                                    II. ANALYSIS

¶ 54                              A. Standards of Review

¶ 55   The contested rulings on appeal involve: the granting of a motion to dismiss, motion for judgment on the pleadings, combined motion under section 2-619.1, and a motion for summary judgment. Each is subject to *de novo* review on appeal. *Hooker v. State Board of Elections*, 2016 IL 121077, ¶ 21 (motion for judgment on the pleadings under section 2-615(e)); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003) (motion to dismiss pursuant to 2-619(a)(9)); *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 316 (2009) (motion to dismiss under 2-615(a)); *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10 (motion under 2-619.1); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 101 (1992) (summary judgment)

¶ 56   An argument for dismissal under section 2-615(a) tests the legal sufficiency of the complaint based on defects apparent on its face. *Kopnick v. JL Woode Management Company, LLC*, 2017 IL App (1st) 152054, ¶ 21. The court examines whether the facts as alleged by the plaintiff are sufficient to state a cause of action, when viewing those facts in the light most favorable to the plaintiff. *Id.* The court should dismiss a cause of action when no set of facts can be proved that would entitle the plaintiff to recover. *Id.*

¶ 57   Judgment on the pleadings under section 2-615(e) is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Hooker*,

2016 IL 121077, ¶ 21. In deciding a motion for judgment on the pleadings, "the court may consider only those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record. All well-pleaded facts and reasonable inferences based on those facts are taken as true." *Id.*

¶ 58 "Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses." *Edelman, Combs, and Latturner v. Hinshaw and Culbertson*, 338 Ill. App. 3d 156, 164 (2003) (citing 735 ILCS 5/2-619.1 (West 2000)). "It is proper for a court when ruling on a motion to dismiss under either section 2-615 or section 2-619 to accept all well-pleaded facts in the complaint as true and to draw all reasonable inferences from those facts in favor of the nonmoving party." *Id.*

¶ 59 A motion to dismiss under section 2-619(a)(9) provides for dismissal where a claim " 'is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " *Van Meter*, 207 Ill. 2d at 367 (quoting 735 ILCS 5/2-619(a)(9) (West 1998)). The moving party "admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim." *Id.* To that end, the court must view all pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* at 367-68. The intent of a section 2-619 motion is to dispose of issues of law and easily proved issues of fact early on in a case. *Id.* at 367. Our supreme court has likened such a motion to a motion for summary judgment, wherein the court considers whether the existence of a genuine issue of material fact precludes dismissal. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). If a defendant satisfies the initial burden

of its section 2-619(a)(9) motion to dismiss, the burden shifts to the plaintiff to show that the affirmative matter is unfounded or requires resolution of an issue of material fact. *Id.*

¶ 60    "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Outboard Marine Corp.*, 154 Ill. 2d at 101. Summary judgment "should only be granted if the movant's right to judgment is clear and free from doubt." *Id.* If a reasonable person could draw a different inference from the undisputed facts, summary judgment is not appropriate. *Id.* When "parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Illinois State Bar Association Mutual Insurance Co. v. Frank M. Greenfield & Associates, P.C.*, 2012 IL App (1st) 110337, ¶ 18 (citations omitted).

¶ 61    In examining the circuit court's rulings, this court "may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." *Frank M. Greenfield & Associates, P.C.*, 2012 IL App (1st) 110337, ¶ 18. While we may accept as true all well-pleaded facts and reasonable inferences therefrom in a complaint, "a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009).

¶ 62    Resolution of this case requires us to construe the language of insurance policies, an undertaking that is also subject to *de novo* appellate review. *Outboard Marine Corp.*, 154 Ill. 2d at 108. "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 391 (1993). In reviewing the language of an insurance policy, the rules of contract

interpretation apply, with our primary object being to ascertain and give effect to the parties' intent as expressed in the policy. *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 17. Clear and unambiguous terms will be enforced as written. *Id.* We "must construe the policy in its entirety, giving effect to all parts of the policy as is possible, including endorsements." (Internal quotation marks omitted) *Id.* "To determine the parties' intent based upon the language used, we construe the policy as a whole, considering the type of insurance for which the parties have contracted, as well as the subject matter insured and the purposes of the policy." *Id.*

¶ 63                               B. Travelers

¶ 64    On appeal, we first address SPCA's contentions regarding the dismissal of its claims against Travelers. SPCA challenges the circuit court's determinations that (1) the Related Wrongful Acts limitation in the Travelers Policies applied to limit coverage to only the first policy issued by Travelers; (2) Travelers was not estopped from asserting the Related Wrongful Acts coverage limitation; and (3) SPCA's claim under section 155 of the Illinois Insurance Code failed as a matter of law.

¶ 65    1. Related Wrongful Acts Coverage Limitation

¶ 66    SPCA asserts that the term Related Wrongful Acts as defined in Travelers' policies is ambiguous and that the circuit court erred in finding that the claims in the underlying Novak Litigation arose out of Related Wrongful Acts. SPCA contends that each new filing by the Novaks alleged different, discrete, new conduct and involved different facts, circumstances, and situations. As such, coverage was not limited to the 2006-2007 Travelers Policy; each successive policy in place when the Novaks made separate claims is available to provide coverage for SPCA.

¶ 67    The Travelers Policies contained the following relevant provisions:

I.    INSURING AGREEMENTS

Liability Coverage

A. The Insurer will pay on behalf of the Insureds

Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

\*\*\*

B. Claim means:

    1) a written demand for monetary relief;

    2) a civil proceeding commenced by service of a complaint or similar pleading; or

    3) a criminal proceeding commenced by a return of an indictment;

    or 4) a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding

    Against any Insured for a Wrongful Act, including an appeal therefrom.

\*\*\*

J. Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages, judgments, settlements and Defense Costs. \*\*\*

\*\*\*

Q. Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

\*\*\*

S. Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in the respective capacities as such, including but not limited to any Wrongful Employment Practices.

\*\*\*

V. GENERAL CONDITIONS AND LIMITATIONS

A. LIMIT OF LIABILITY AND RETENTION

\*\*\*

2) Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim. (Emphasis omitted.)

¶ 68      SPCA relies on *Doe v. Illinois State Medical Inter-Insurance Exchange*, 234 Ill. App. 3d 129, 136 (1992), in arguing that the term Related Wrongful Acts in Travelers' policy is ambiguous.

¶ 69      An insurance contract may be ambiguous where it can be subject to more than one reasonable interpretation. *Doe*, 234 Ill. App. 3d at 137. We consider the clause within its factual

context. *Id.* We also read policy provisions in conjunction, not separately; " '[t]he inquiry is whether the provision is subject to more than one reasonable interpretation, not whether other possibilities can be suggested.' " *Continental Casualty Co. v. Howard Hoffman and Associates,* 2011 IL App (1st) 100957, ¶ 42 (quoting *Erie Insurance Exchange v. Triana,* 398 Ill. App. 3d 365, 368 (2010)). If a term is not defined, we adopt its "plain, ordinary, and popular meaning[], looking to [its] dictionary definition[]." *Illinois Union Insurance Co. v. Medline Industries, Inc.*, 2022 IL App (2d) 210175, ¶ 60.

¶ 70     In *Doe*, the insured doctor rendered negligent care to the same patient during the effective dates of two successive insurance policies, but the insurer refused to pay from the second policy on grounds that all of the negligent conduct constituted one claim as a series of related acts under the "related acts" clause in the policy and, therefore, only the first policy in effect when the conduct first began was answerable. *Id.* at 129-139. On appeal, the insurer argued, *inter alia*, that the "related acts" clause was unambiguous: "all personal injuries sustained by one or more persons arising out of a single act or omission or a series of related acts or omissions in the rendering of or failure to render professional services to any one person shall be considered one claim." *Id.* at 136. The court found this language ambiguous on grounds that the term "related" was not defined in the policy and there was no generally accepted legal meaning. *Id.* at 137.

¶ 71     We do not agree with SPCA that the policy here was ambiguous due to its use of the word "related." In contrast to the *Doe* policy, the Travelers Policy here went to great lengths to define its operative terms. As set forth, *supra*, the policy specifically defined "Wrongful Acts" and "Related Wrongful Acts." "Related Wrongful Acts" are "Wrongful Acts" that "arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations."

Additionally, the policy elaborated that "Related Wrongful Acts" constitute a single Claim and Loss in Section V.A.(2) in stating that Losses:

> "based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more such Related Wrongful Acts is made against any of the Insureds." (Emphasis omitted.)

¶ 72 These definitions stand in stark contrast to the policy in *Doe*, which did not provide any definition or further explanation of the term "related acts" or how they impact what constitutes a "Loss." We do not find the definition of "Related Wrongful Acts" ambiguous merely because of the use of the term "related" in the definition, when considering the definition in its entirety and the other provisions of the policy which specifically explain the terms of the coverage.

¶ 73 Although not binding on this court, we note that the federal court similarly found *Doe* unpersuasive and concluded that the policy's "Related Wrongful Acts" term was not ambiguous. *State Parkway Condominium Ass'n,* 2018 WL 4333623, *3. In ruling, the federal court observed that other federal courts have addressed similar language and found no ambiguity. *Id.* (citing *Cushman & Wakefield, Inc. v. Illinois National Insurance Company*, No. 14 C 8725, 2018 WL 1898339, at *15-16 (N.D. Ill. Apr. 20, 2018) (finding that the terms "related" and "interrelated" were not ambiguous merely because they were not separately defined, as neither party presented differing interpretations and nothing in the policy suggested they be given special meaning); *Federal Insurance Co. v. Illinois Funeral Directors Ass'n,* No. 09 C 1634, 2010 WL 5099979, at *7 (N.D. Ill. Dec. 8, 2010) (court readily applied the ordinary meaning of the policy language in

finding the underlying issues were related claims, where such was defined as "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.").

¶ 74     This court has found references to "related acts" in policy language to be unambiguous. In *Continental Casualty Co. v. Hoffman*, 2011 IL App (1st) 100957, ¶7, the court found the terms "related acts or omissions" and "related claims" to be unambiguous, even where no separate definition of "related" was provided in the policy. In *Hoffman,* the policy defined "related acts or omissions" as "all acts or omissions in the rendering of legal services that are temporally, logically, or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision," and defined "related claims" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services." (Emphasis omitted). *Id*. ¶ 7. The court found the inclusion of "the concept of a logical connection" in the definition of "related acts" did not render the terms ambiguous. *Id.* ¶ 38. Despite the reference to "related acts" in the definition of "related claims," the court found neither term to be ambiguous.

¶ 75     Having determined that the language of the Travelers Policies was not ambiguous, we next consider whether the underlying claims involved in the Novak Litigation constituted Related Wrongful Acts. The underlying claims—specifically, the 2007 IDHR Claim, the Novak Counterclaims, the 2010 IDHR Claim, and the Novak Federal Lawsuit, all repeated similar allegations of Wrongful Acts by SPCA consisting of numerous incidents of retaliatory, harassing, and discriminatory conduct against Novak based on his disability, his filing of the 2007 IDHR Action, and his attempt to highlight accounting irregularities and have SPCA fairly enforce

association rules. As the circuit court found, the underlying Novak claims constituted "Related Wrongful Acts" under the Travelers Policy as they all arose out of, are based on, relate to, or are in consequence of, the same facts, circumstances, or situations. The claims all arose out of SPCA's alleged continuous harassing and discriminatory conduct and retaliation for Novak's 2007 IDHR Claim. By its own pleadings, SPCA confirmed as much in its allegations in the Federal Novak Claim that it arose out of "continuous discriminatory and retaliatory conduct."

¶ 76    SPCA cites *Doe* and *Continental Casualty Co. v. Grossman*, 271 Ill. App. 3d 206 (1995), for the proposition that separate negligent acts or claims involving separate claimants cannot be funneled into one claim under the same policy. However, we do not find *Doe* persuasive on this point as the court there found that the policy provided no definition or guidance for "a series of related acts or omissions." Similarly, in *Grossman*, the policy provided that the single claim limit applied to claims arising out of "the same or related wrongful acts." *Grossman,* 271 Ill. App. 3d at 208. The *Grossman* policy failed to provide any further guidance on determining whether claims were related. In contrast, Travelers' policy here provided such guidance in defining the term "Related Wrongful Acts." In further distinction from the interrelatedness of the Novak claims here, the *Grossmann* court specifically found that the distinct instances of malpractice separately led to the underlying plaintiffs' losses and each plaintiff may be entitled to recover on entirely independent, unrelated facts, at an eventual trial. *Id.* at 211-12.

¶ 77    Courts applying Illinois law have consistently found that claims involved related wrongful acts under circumstances analogous to the Novak Litigation. Referring back to *Hoffman*, this court found that multiple acts of embezzlement by a law firm employee constituted "related acts" under the firm's professional liability policy, even though separate and distinct estate claimants were

involved and the acts of embezzlement occurred at different times over the span of several years. *Hoffman*, 2011 IL App (1st) 100957, ¶ 67. The acts were "logically and causally connected by the common fact, circumstance, situation, or decision comprised of Ms. Stachura's scheme to embezzle estate funds" because the actions had "common ties" and involved the same "modus operandi." *Id.*

¶ 78    By way of further example, in *Illinois Funeral Directors Insurance Co.*, 2010 WL 5099979, *6-8, a federal case decided under Illinois law, the court found that an administrative proceeding, a later civil action, and grand jury subpoenas were related claims. The court reasoned that the claims were, in part, based on the same facts and circumstances, despite the lawsuits involving different parties, theories, and damages. The relevant inquiry was whether the claims were "based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damages or events or the same series of facts, circumstances, situations, transactions, results, damage, or events." *Id.* See also *Hanover Insurance Co. v. R.W. Dunteman Co.*, 446 F. Supp. 3d 336, 347 (N.D. Ill. 2020) (based on the language of the policy defining "related claims," it did not matter whether the pleadings and claims sought different damages, advanced different legal theories, or had different venues or parties); *Twin City Fire Insurance Co. v. Permatron Corp.*, 2018 WL 1565599 (N.D. Ill. Mar. 30, 2018) (finding claims resulted from "interrelated wrongful acts" where they all stemmed from employee's firing); *Cushman & Wakefield, Inc.*, 14 C 8725, 2018 WL 1898339, at *17-18 (N.D. Ill. Apr. 20, 2018) (finding that claims bore sufficient factual nexus despite involving different properties, differently situated plaintiffs, and different legal theories, but involved some overlapping properties and a common scheme); *Gregory v. Home Insurance Co.*, 876 F.2d 602, 602-06 (7th Cir. 1989) (finding that class

action suit alleging violations of securities laws, RICO, and common law fraud, and another suit alleging professional negligence, were "related").

¶ 79    Accordingly, we find that the Novak Litigation arose from Related Wrongful Acts. Under the Travelers Policies, Losses based on or arising out of Related Wrongful Acts constitute a single Loss incurred as a result of a single Claim. A single Claim is deemed to have been made on the date the first Claim for one or more Related Wrongful Acts was made. As such, the circuit court correctly found that the Novak Litigation constituted a single Claim resulting from a single Loss arising from Related Wrongful Acts, and that single Claim was first made in January 2007 when Novak filed the 2007 IDHR Action. Coverage for the Novak Litigation was thus confined to the 2006-2007 Travelers Policy and its $1 million coverage limit.

¶ 80    2. Waiver and Estoppel of the "Related Wrongful Acts" Limitation

¶ 81    SPCA argues on appeal that Travelers should be estopped from asserting, or has waived, the "Related Wrongful Acts" limitation because Travelers had knowledge of this potential defense to coverage, but assumed and controlled SPCA's defense for ten years, and without adequately reserving its right to invoke this policy defense.

> "In the context of insurance law, the doctrines of 'waiver' and 'estoppel' are closely akin and may often coexist. However, waiver and estoppel are two separate and distinct doctrines. [Citation.] Waiver consists of an express or implied voluntary and intentional relinquishment of a known right. In contrast, estoppel refers to an abatement, by operation of law, of the insurer's rights where it would be inequitable to permit their assertion. *** [W]here there is no dispute as to the material facts and only one inference can be drawn

therefrom, summary judgment is appropriate." *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 21.

¶ 82    We first examine the doctrine of waiver. Waiver occurs where a party either expressly by agreement or impliedly by its course of conduct, waives a legal right. *Lake County Grading Company of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 463 (1995). A waiver "may be either 'made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived a right.' [Citation.] The party asserting implied waiver must show a 'clear, unequivocal, and decisive act of the party who is alleged to have committed waiver.' " *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 42 (quoting *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 104-05 (1991)).

¶ 83    SPCA does not allege an express waiver by Travelers of the Related Wrongful Acts limitation to coverage. Thus, any waiver must be implied from Traveler's conduct.

¶ 84    Having reviewed the pleadings, we find that SPCA has not shown any "clear, unequivocal, and decisive act" by Travelers that would waive its right to invoke the Related Wrongful Acts clause or the $1 million coverage limitation.

¶ 85    Indeed, Travelers' written communications to SPCA show the opposite is true. Travelers sent SPCA a series of reservation of rights letters over the years as Novak filed his claims, and each letter specifically and repeatedly advised SPCA of the $1 million coverage limit, including defense costs. Each letter also advised SPCA that (1) it was providing only a preliminary evaluation of coverage, (2) coverage could be withdrawn in the future if it was later determined no coverage existed, (3) certain exclusions may apply, including, but not limited to, those set forth in the letter, (4) that it was providing a defense under a "*full reservation of rights*, including but

not limited to those stated above," (5) SPCA should investigate other potential applicable insurance policies, (6) SPCA continued to "fully reserve all rights, remedies, and defenses in this matter, including but not limited to the right to raise additional terms, conditions and exclusions as defenses to coverage should they later be determined to apply," and (7) neither the letters nor any actions by Travelers or its agents "shall constitute, or be deemed a waiver, estoppel, admission or liability or otherwise prejudice of any kind to Travelers's rights and defenses under the Policy, by law, or otherwise." In addition, the February 2009 ROR Letter specifically invoked the "Related Wrongful Acts" provision.

¶ 86      The deposition testimony also failed to show any implied waiver by Travelers, and, similar to the ROR letters, points to the opposite conclusion, *i.e.*, that Travelers repeatedly informed SPCA that it was reserving the right to invoke policy defenses and that there was a $1 million coverage limitation for the Novak Litigation, including defense costs. SPCA board president Marta testified that she discussed the $1 million coverage limit with Travelers' claims counsel Morin on several occasions during settlement and mediation discussions and phone calls, and she understood the coverage limit was $1 million. Marta was never informed that more than $1 million would be available. Indeed, Marta periodically inquired what the current level of exhaustion of the $1 million coverage was due to ongoing defense costs, she informed the SPCA board of this, and she testified that SPCA needed to budget for additional legal fees in the event the $1 million coverage was exhausted. Notably, Marta did not ask for the total spent on defense of each Novak claim, individually, which defeats SPCA's assertion that more than $1 million was available because coverage was available under more than one policy. The on-site manager Donna Weber also testified that she never heard that any amount over $1 million was available. Travelers'

representative Morin similarly testified that she discussed with Marta the $1 million coverage limit applicable to the Novak Litigation throughout various mediation sessions and phone calls between 2013 and 2015.

¶ 87    Considering the above, SPCA failed to show any "clear, unequivocal, and decisive act" by Travelers that would show it impliedly waived its right to assert the $1 million coverage limitation.

¶ 88    Turning to the issue of estoppel, SPCA contends that Travelers is estopped from raising the coverage defense because Travelers sent inconsistent reservation of rights letters, some letters did not mention the "Related Wrongful Acts" limitation, it did not send a reservation of rights letter following the Novak Federal Lawsuit, Travelers induced SPCA to pay the $10,000 deductible for the 2009-2010 Travelers Policy, and SPCA was induced to continue purchasing policies because Travelers failed to inform it that the Related Wrongful Acts limitation would confine coverage of all Novak claims to the 2006-2007 Travelers Policy. SPCA asserts that it suffered prejudice as a result by Travelers controlling strategic decisions and costs regarding its defense.

¶ 89    The court applies the doctrine of estoppel where:

"(1) the party against whom estoppel is asserted has misrepresented or concealed a material fact; (2) the estopped party had either actual or implied knowledge that the representation was untrue at the time it was made; (3) the party asserting estoppel was unaware that the representation was untrue both at the time it was made and at the time it was acted upon; (4) the estopped party intended or expected the other party to act upon the misrepresentation; (5) the party asserting estoppel did rely or act upon the misrepresentation; and (6) the party asserting estoppel would be prejudiced if the court did

not apply estoppel." *Lake County Grading Company of Libertyville*, 275 Ill. App. 3d at 463.

¶ 90    SPCA has not identified any incidence where Travelers represented anything to the contrary regarding the $1 million coverage limit, made misrepresentations or concealed material facts, or had actual or implied knowledge of any untrue representation made to SPCA, that Travelers intended or expected SPCA to act upon any misrepresentation, or that SPCA relied on any misrepresentations or misleading conduct by Travelers or suffered prejudice. As previously detailed in our waiver analysis, *supra*, Travelers sent several reservation of rights letters to SPCA which plainly outlined its preliminary coverage evaluation, repeatedly informed SPCA that the coverage limitation of $1 million (including defense costs) applied, set forth specific reservation of rights provisions, informed SPCA that two claims constituted "Related Wrongful Acts," and repeatedly informed SPCA that Travelers was continuing its full reservation of rights, that the duty to defend could be extinguished if it later determined no coverage existed, and requested that it examine any other policies with its other insurers. Although Travelers did not provide a similar letter after the Novak Federal Lawsuit was filed, SPCA acknowledged in its pleadings and its brief on appeal that this was essentially "a continuation of the Chancery Lawsuit and the 2010 IDHR Charge." (Appellant's Brief, p. 22).

¶ 91    To the extent that SPCA argues that Travelers sent misleading or inconsistent reservation of rights letters that referred to "Related Wrongful Acts" and coverage under the 2006-2007 and 2009-2020 Policies, it failed to show that SPCA ever relied on these letters. Both Marta and Weber testified that they were unaware of any ROR letters and had not reviewed any until they prepared for their depositions in this case, so Travelers has not shown any reliance in that regard.

¶ 92    The deposition testimony of Morin, Marta, and Weber also failed to show any confusion on this point, as they all agreed only $1 million was available. Indeed, Marta's testimony establishes that SPCA understood that the $1 million coverage limitation applied to *all* of the Novak claims. Marta testified that, over the years of the Novak Litigation, she periodically asked for an updated total of the amount of coverage exhausted in defense costs. If Marta believed that each claim had its own $1 million limitation or that some claims were covered under the 2006-2007 Travelers Policy and others were covered under the 2009-2010 Travelers Policy, each with their own $1 million limitation, then she would have been confused when Morin informed her that, for example, $700,000 of the $1 million limit had been expended.

¶ 93    SPCA also has not demonstrated prejudice, as, despite being informed of the $1 million coverage limitation, SPCA did not show that it insisted on settling any of the Novak claims or that Travelers refused to do so, or that Travelers prevented SPCA from alerting its other insurers about the Novak claims. Further, Travelers agreed to appoint counsel of SPCA's choice for each Novak claim and the evidence shows that counsel was in regular communication with SPCA regarding the progress of the Novak Litigation over the years, the amount spent on defense costs, and that SPCA representatives participated in settlement negotiations.

¶ 94    SPCA again turns to *Doe*, 234 Ill. App. at 137, in asserting that Travelers's letters did not adequately reserve its rights to the coverage limitations. "If the insurer adequately informs the insured that it is proceeding under a reservation of rights, identifying the policy provisions that may preclude coverage, and the insured accepts defense counsel provided by the insurer, then the insurer is not estopped from asserting policy defenses." *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 20. A "[b]are notice of a reservation of rights is insufficient." *Id.* Defending

under a reservation of rights allows an insurer to "suspend the operation of estoppel doctrines; when an insurer defends a claim against its insured under a proper reservation of rights, the insured cannot then so easily claim that it was prejudiced by the insurer's conflict of interest." *Royal Ins. Co. v. Process Design Associates, Inc.*, 221 Ill. App. 3d 966, 973 (1991).

¶ 95    The circumstances in *Doe* are distinguishable. In *Doe,* the insurer provided no reservation of rights letters and did not inform the insured of a potential conflict of interest or that coverage would only be available under one policy (where the negligent treatment occurred over the span of two policy periods) until after a verdict was reached in the underlying malpractice claim. *Doe*, 234 Ill. App. at 134. Here, Travelers did provide several reservation of rights letters advising of the coverage limitations and exclusions, its reservation of the right to invoke future exclusions, and also repeatedly informed SPCA representatives orally that only $1 million in coverage was available.

¶ 96    SPCA also cites *Rogers Cartage Co. v. Travelers Indemnity Co*., 2018 IL App (5th) 160098, ¶ 54, in asserting that "Illinois courts have found estoppel even when there has been a reservation of rights." In that case, the insurer defended the insured under a reservation of rights, but refused an offer to settle the underlying case for an amount within the policy limits after litigating the case for a decade. *Id.* The court applied estoppel against the insurer because the insurer knew that the insured faced liability and damages exceeding the limits and that going to trial and losing would result in the insured declaring bankruptcy, and the insurer threatened the insured that accepting the settlement would negate coverage. *Id.* ¶¶ 53-55. Here, SPCA has not pleaded any such egregious conduct by Travelers. It was not apparent to SPCA or Travelers

whether the Novak Litigation would exceed the coverage available, and there are no allegations of any threats by Travelers to force SPCA not to settle.

¶ 97    3. Claim under Section 155 of the Illinois Insurance Code

¶ 98    In its final issue, SPCA argues that the circuit court erred in dismissing, pursuant to section 2-615 of the Illinois Code of Civil Procedure, count III of its SATC, which asserted a claim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)).

¶ 99    "Section 155 of the Insurance Code provides that a penalty, reasonable attorney fees and other costs can be imposed against a company for 'vexatious and unreasonable' action or delay." *Scudella v. Illinois Farmers Ins. Co.*, 174 Ill. App. 3d 245, 252 (1988). The key inquiry is whether the insurer's conduct was "vexatious and unreasonable." *Uhlich Children's Advantage Network v. National Union Fire Company of Pittsburgh, PA*, 398 Ill. App. 3d 710, 723 (2010). (citing 215 ILCS 5/155 (West 2006)). However, "[a]n insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sections where a *bona fide* dispute over coverage exists." *Id.* "[W]here a bona fide dispute concerning coverage exists, costs and sanctions [under Section 155] are inappropriate." *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 379 (2001).

¶ 100   We find SPCA failed to state a claim under section 155. Travelers' determination that the liability limit had been exhausted was based on the terms of the Travelers' insurance policy. "[A]ssertions of legitimate policy defenses and denials based on a policy's express wording are inappropriate for invoking [section 155]." *Scudella*, 174 Ill. App. 3d at 253. The proceedings in this case and the federal court's ruling in Federal Coverage Action that the Related Wrongful Acts

provision in Travelers' policy applied demonstrated the existence of a *bona fide* dispute over coverage. *State Parkway Condominium Assoc.*, 2018 WL 4333623, *4.

¶ 101                                        C. AISLIC

¶ 102    SPCA next argues on appeal that the circuit court erred in dismissing counts IV, V, and VI of the SATC against AISLIC, which alleged breach of contract, estoppel, and a claim under section 155, respectively.

¶ 103   i. Count IV. Breach of Contract

¶ 104    In its breach of contract claim, SPCA specifically alleged that AISLIC breached the 2008 and 2009 commercial general liability coverage under the AISLIC Umbrella Policies and the limited director and officer coverage under the 2007 AISLIC Umbrella Policy in refusing to provide coverage for the underlying Novak claims that remained pending at the time—the Novak Second Amended Counterclaim and the 2013 Novak Federal Lawsuit.

¶ 105    The 2007 AISLIC Umbrella policy was effective May 30, 2006, to June 1, 2007. This policy included Endorsement 16 related to director and officer liability coverage:

> "NOTICE: THIS ENDORSEMENT MAY PROVIDE CLAIMS-MADE COVERAGE. CLAIMS-MADE COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US WHILE THE COVERGAGE IS IN FORCE. ***
>
> Section V. EXCLUSIONS is amended to include the following additional exclusion:
>
> Condominium/Co-Operative Directors and Officers

This Insurance does not apply to any liability arising out of any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by or on behalf of the Insured in the performance of his or her duties as Director or Officer of any Condominium/Co-Operative owned or operated by the Named Insured.

However, if insurance for such is provided by a policy listed in the Scheduled Underlying Insurance:

1. This exclusion shall not apply, and

2. Coverage under this policy for such coverage will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance and premium of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance."

¶ 106    The circuit court found that the director and officer coverage under the 2007 AISLIC Umbrella Policy was not available as a matter of law, because such limited coverage was only available if the claim was first made and reported while the coverage was in force.

¶ 107    Coverage under a "claims-made" policy "is triggered when two events occur: (1) the claim must be made during the policy period, and (2) the claim must be reported during the policy period. Unless these two conditions occur, no coverage is provided under the claims-made policy." *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340, 349 (1999).

¶ 108    The director and officer endorsement provided that claims-made coverage was limited to "claims first made against the insured and reported to us while the coverage is in force." The effective date of this policy was May 30, 2006, to June 1, 2007. SPCA, by its own allegations in

the SATC, did not report any claim to AISLIC until January 2017, after Travelers informed SPCA that coverage had been exhausted. Accordingly, the claims were not *reported* to AISLIC during the policy period. Moreover, the remaining pending claims in the underlying Novak Litigation were first made to SPCA after the expiration of the policy period, according to SPCA's allegations. The Novak Second Amended Counterclaim was filed in 2009 and the Novak Federal Lawsuit was filed in 2013. As such, the claims also were not *made to the insured* during the policy period.

¶ 109   SPCA argues that the director and officer coverage "drops down" and continues in force upon exhaustion of the Scheduled Underlying Insurance (Travelers), that it was not required to give notice during the policy period, that notice to Travelers provided sufficient notice to AISLIC, and it was only required to notify AISLIC "as soon as practicable" pursuant to the "Conditions" section of the AISLIC 2007 Umbrella Policy. These assertions, however, contradict the specific language of the director and officer endorsement requiring notice to AISLIC, the insured, during the effective dates of the policy and providing that claims-made coverage was "limited to liability for claims first made against the insured and reported to us while the coverage is in force." SCPA's arguments would convert the limited director and officer claims-made coverage to occurrence coverage and render the claims-made notice requirement of the director and officer coverage meaningless. SPCA's interpretation also ignores the additional language in the director and officer endorsement that "[c]overage under this policy for such [director and officer] coverage will follow the terms, definition, conditions and exclusions of Scheduled Underlying Insurance, *subject to the Policy Period \*\*\**." (Emphasis added).

¶ 110   Further, even assuming that the underlying remaining claims were first made and reported during the AISLIC Umbrella Policy period, count IV nevertheless failed to allege that the

remaining underlying claims qualified for director and officer coverage under the language of the 2007 AISLIC Umbrella Policy. When the claim was first reported to AISLIC in January 2017, the only remaining pending claims were (1) Novak's claim of breach of fiduciary duty against SPCA in the Novak Second Amended Counterclaim, and (2) fair housing violation claims against Lieberman Management and Weber in the 2013 Novak Federal Lawsuit. The director and officer coverage in the 2007 AISLIC Umbrella Policy covered "any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by or on behalf of the Insured in the performance of his or her duties *as a Director or Officer* of" SPCA. (Emphasis added). As such, there were no remaining claims or allegations of any acts, errors or misstatements by any individual directors or officers of SPCA at the time. Accordingly, the circuit court correctly found that SPCA was not entitled to coverage under the director and officer endorsement in the 2007 AISLIC Umbrella Policy as a matter of law.

¶ 111 Turning to the commercial general liability coverage in the 2008 and 2009 AISLIC Umbrella Policies, the circuit court found that SPCA only alleged mere conclusions that the underlying pleadings (the remaining claims in the Novak Second Amended Counterclaim and the 2013 Novak Federal Lawsuit) alleged damages from "Bodily Injury" or "Personal Injury" or "Advertising Injury" as required by the policies.

¶ 112 The 2008 AISLIC Umbrella Policy was effective August 1, 2006, to August 1, 2008. The 2009 AISLIC Umbrella Policy was effective August 21, 2007, to August 21, 2009. These policies contained similar terms, as set forth below:

"A. We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed

by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies[.] (emphasis omitted).

B. This policy applies, only if:

1. the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere and the Bodily Injury or Property Damage occurs during the Policy Period; and

2. the Personal Injury and Advertising Injury is caused by an Occurrence that takes place anywhere arising out of your business, but only if the Occurrence was committed during the Policy Period.

¶ 113 The term "Bodily Injury" was defined as "bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time." Section VII set forth relevant definitions. The phrase "Personal Injury or Advertising Injury" is defined as "injury arising out of your business *** arising out of one or more of the following offenses" and lists, *inter alia*, malicious prosecution, slander, wrongful eviction, invasion of privacy, and false arrest. An "Occurrence" with regard to bodily injury was defined as "an accident," and with regard to personal injury and advertising injury, was defined as "an offense arising out of your business that causes Personal Injury or Advertising Injury."

¶ 114 We find that SPCA failed to plead sufficient facts in Count IV demonstrating that the remaining operative underlying claims in the Novak Second Amended Counterclaim and the Novak Federal Lawsuit fell under AISLIC's commercial general liability coverage as they did not plead a claim for bodily injury or personal injury or advertising injury. As noted, at the time Travelers withdrew its defense and SPCA alerted AISLIC to invoke coverage, the only remaining

pending claims in the Novak Litigation were the breach of fiduciary duty count against SPCA in the Novak Second Amended Counterclaim,[5] and the fair housing law claims against Lieberman Management and Weber in the Novak Federal Lawsuit.

¶ 115   Although SPCA argues that the Novak Second Amended Counterclaim alleged emotional distress, malicious prosecution, slander, and invasion of privacy, the only remaining claim from Novak's Second Amended Counterclaim was breach of fiduciary duty, alleging failure to comply with various association rules. SPCA points to Novak's allegation of emotional distress, but there was no allegation that emotional distress was the result of "bodily injury, sickness, or disease," as required by the policy. The remaining claims did not allege any "injury arising out of your business *** arising out" of, *inter alia*, malicious prosecution, invasion of private occupancy, or slander, caused by an occurrence during the policy period. SPCA did not allege facts showing that any emotional distress arose from false arrest, malicious prosecution, slander, or any of the other listed offenses.

¶ 116   SPCA points to its allegations about various interactions with SPCA that Novak alleged were discriminatory or harassing. However, most of the alleged statements were made by unit owners, not SPCA or its board members. Only one allegation indicated that on one occasion, the board president stated that he would not address "unsubstantiated allegations"—apparently referring to claims Novak had made about accounting irregularities, and also a general allegation

---

[5] We note that the Second Amended Counterclaim did not incorporate the prior counterclaims, and it was therefore the operative pleading for determining coverage. " 'Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154 (1983) (quoting *Bowman v. County of Lake*, 29 Ill.2d 268, 272 (1963)). See also *Goering v. Midwest Neurology*, Ltd., 2021 IL App (2d) 200735 (recognizing that the plaintiff's amended complaint was the "operative pleading" where it was complete in itself and did not adopt the prior pleading).

that "the board made public, disparaging comments about Novak in front of other unit owners." These general statements are insufficient to show "bodily injury" or "personal and advertising injury" even assuming they were part of the breach of fiduciary duty claim.

¶ 117   With respect to the Novak Federal Lawsuit, at the time Travelers withdrew its defense, the emotional distress claims had been dismissed with prejudice, and there remained pending only the fair housing claims against Lieberman Management and Weber. Thus, there were no claims pending in the Novak Federal Lawsuit against an AISLIC "insured" at the time.[6]  SPCA asserts that the Novak Federal Lawsuit alleged a claim for malicious prosecution. However, Novak merely characterized SPCA's Chancery Lawsuit as a "malicious prosecution lawsuit" in its factual allegations in the Novak Federal Lawsuit. Merely characterizing SPCA's Chancery Lawsuit as malicious prosecution was insufficient to constitute "bodily injury" or "personal injury and advertising injury," as it does not also allege an injury arising from malicious prosecution.

¶ 118   Accordingly, SPCA failed to state a claim that it was entitled to any commercial general liability coverage under the AISLIC Umbrella Policies. The circuit court correctly granted judgment on the pleadings and dismissed this count pursuant to section 2-615 (735 ILCS 5/2-615 (West 2020)).

¶ 119    ii. Count V. Estoppel

¶ 120   Turning to count V, SPCA argues that AISLIC was estopped from asserting any policy defenses because it did not provide a defense or file a declaratory action.

¶ 121   In the insurance context, when an insurer determines that a complaint or claim is not covered under a policy that includes a duty to defend, it must either (1) defend the suit under a

---

[6] There is no allegation on appeal that Lieberman Management or Weber were named insureds.

reservation of rights, or (2) it can seek a declaratory judgment of no coverage. *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 716. If the insurer fails to take either of these steps and later is found to have wrongfully denied coverage, the insurer will be estopped from raising policy defenses to coverage, regardless of whether the insured shows any prejudice. *Id.*; *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 25. "Because the estoppel doctrine applies only where an insurer has breached its duty to defend, a court first inquires whether the insurer had a duty to defend and whether it breached that duty." (Internal quotation marks removed). *Uhlich Children's Advantage Network,* 398 Ill. App. 3d at 716.

¶ 122   As previously discussed, AISLIC had no duty to defend because the remaining claims in the underlying pleadings did not potentially fall within AISLIC's policies. SPCA has no claim for estoppel where no coverage was owed and AISLIC did not breach any duty to defend. "Estoppel *** generally cannot be used to create coverage where none otherwise exists." *Schuster v. Occidental Fire & Casualty Company of North America*, 2015 IL App (1st) 140718, ¶ 29.

¶ 123   Moreover, even if we were to find a duty to defend existed, we would nevertheless conclude that AISLIC is not estopped from raising policy defenses. SPCA contends that AISLIC "did nothing" and failed to pursue its own declaratory judgment action regarding coverage after SPCA informed it that Travelers withdrew its defense. Reviewing the timeline of the pleadings, however, reveals no dilatory or undue delay by AISLIC in pursuing a resolution of the coverage issue.

¶ 124   Travelers informed SPCA of its withdrawal on October 4, 2017. Great American initiated the Federal Coverage case, and on October 31, 2017, SPCA filed a counterclaim and third-party complaint against Travelers, AISLIC, Harleysville, Strathmore, and Steadfast. SPCA alleged that

it provided "formal notice and a request to undertake SPCA's defense" to AISLIC in January 2018. After dismissal of the Federal Coverage Case, SPCA filed a counterclaim and a third-party complaint against, *inter alia*, AISLIC in the circuit court, in which AISLIC actively litigated the coverage issue in filing dispositive motions. AISLIC sent a letter in February 2019 responding to SPCA's request for coverage, in which it stated that AISLIC intended to promptly file a declaratory judgment action, unless SPCA intended to soon file an amended declaratory judgment action:

> "to obtain a judicial declaration of AISLIC's rights under the Umbrella Policy. We understand, however, that SPCA intends to soon file its own amended declaratory judgment action against AISLIC regarding the parties' rights under the Umbrella Policy. If our understanding is incorrect, please advise."

¶ 125 The fact that SPCA, instead of AISLIC, first filed the declaratory action to determine coverage does not necessitate the application of estoppel.

> "While there need not be a race to the courthouse and the insured should not be able to estop the insurer from asserting policy defenses by filing a complaint for declaratory judgment first, the insurer must take some action to adjudicate the issue of coverage or undertake to defend the insured under a reservation of rights, and it must take that action within a reasonable time of a demand by the insured." *Korte Const. Co. v. Am. States Ins.*, 322 Ill. App. 3d 451 (2001).

¶ 126 However, "the appellate courts of this state have repeatedly held that the initiation of a declaratory judgment action by the *insured,* rather than the insurer, is sufficient to avoid estoppel. As this court noted nearly 25 years ago, '[i]t is the fact of the proceeding itself, and not the identity of the party initiating the proceeding, that is of legal import.' " *L.A. Connection v. Penn-American*

*Insurance Co.*, 363 Ill. App. 3d 259, 263 (2006) (quoting *Ayers v. Bituminous Insurance Co.,* 100 Ill. App. 3d 33, 35 n. 1, (1981)). See also *Pekin Insurance Co. v. Allstate Insurance Co.,* 329 Ill. App. 3d 46 (2002) (rejecting insured's estoppel argument where insured filed declaratory judgment action, insurer filed a counterclaim and motion for judgment on the pleadings and the underlying lawsuit settled a few days later).

¶ 127   Less than a month lapsed between the time SPCA received notice from Travelers and SPCA instituted its declaratory action against AISLIC in federal court. "If an insured could prevent an insurer from raising valid policy defenses by simply filing a declaratory judgment action immediately upon denial of coverage, we would indeed be sponsoring a race to the courthouse." *L.A. Connection*, 363 Ill. App 3d at 264. Further, when litigation resumed in state court, AISLIC actively litigated the coverage issue in SPCA's third-party complaint in an attempt to obtain a definitive coverage determination.

¶ 128   iii. Count VI Section 155 Claim

¶ 129   In its final issue regarding AISLIC, SPCA contends that the circuit court erred in dismissing its section 155 claim against AISLIC for "vexatious and unreasonable" action or delay regarding an insured's claim. 215 ILCS 5/155 (West 2020).

¶ 130   SPCA sets forth the merely conclusory allegations that AISLIC engaged in vexatious and unreasonable delay. As previously noted, asserting legitimate policy defenses to coverage do not give rise to a section 155 claim. *Scudella,* 174 Ill. App. 3d at 253; *Dominick's Finer Foods*, 2018 IL App (1st) 161864, ¶ 94. It is well settled under Illinois law that an insured cannot prevail on a section 155 claim where there is a *bona fide* dispute over coverage. *Uhlich Children's Advantage Network,* 398 Ill. App. 3d at 723.

¶ 131   SPCA relies on *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 160-61 (1999), where the court granted the insured's request for fees and costs under section 155 due to the insurer's delay of one year and four months between when the insurer was notified of the claim against the insured and when the insurer filed a declaratory action regarding coverage, while the insured settled the underlying case on its own. However, the present case is distinguishable in light of the many ongoing coverage disputes between SPCA and its several insurers, and only a few weeks elapsed between the time AISLIC could have been notified, at the earliest, of Travelers' withdrawal, and when SPCA initiated the federal declaratory action against it. The circuit court correctly dismissed count VI for failure to state a claim.

¶ 132                               D. American Auto

¶ 133   SPCA next challenges the circuit court's order granting judgment on the pleadings in favor of American Automobile on counts VII (breach of contract), VIII (estoppel), and IX (section 155 penalties) of the SATC, American Automobile's first affirmative defense, and American Automobile's counterclaim against SPCA.

¶ 134   i. Count VII Breach of Contract

¶ 135   On appeal, SPCA challenges the circuit court's determination that none of the remaining allegations from the underlying litigation alleged conduct occurring during the effective dates of the American Automobile Policy. SPCA asserts that the underlying allegations "at least potentially" fell within the effective dates of the American Automobile Policy (effective from May 30, 2006, to May 30, 2007) because, in the Novak Second Amended Counterclaim, Novak alleged that harassing and discriminatory conduct occurred in "the past few years." However, Novak follows up on this general statement by clarifying that: "To begin, on September 7, 2007, Mr. and

Mrs. Novak received a copy of the 2006 Audited Financial Statements." Thus, Novak's first specific allegation in his counterclaim is alleged to have occurred in September 2007, which is after the termination date of the American Automobile policy.

¶ 136   Similarly, all other allegations following this one in the Second Amended Counterclaim are alleged to have occurred after September 2007, also outside the policy's effective dates. Even SPCA's brief on appeal apparently concedes this point, as it describes the Novak Counterclaim as alleging that Novak suffered mental anguish, emotional distress, and other injuries "beginning after the September 2007 settlement of his 2007 IDHR claim and continuing through 2008." (Appellant brief, p. 4).

¶ 137   SPCA further contends that in the Novak Federal Lawsuit, Novak's claim entailed discriminatory and retaliatory conduct ever since Novak filed the 2007 IDHR Charge in January 2007, which would fall within the policy period. However, closer review of the Novak Federal Lawsuit reveals that all allegations of such conduct occurred starting in September 2007, onward. As part of the factual background, Novak pleaded that the 2007 IDHR Claim was settled on September 4, 2007. Novak pleaded the first incident of alleged discriminatory or harassing conduct occurred on September 5, 2007, when Weber threatened to write up Novak for taking his service dog on the passenger elevator instead of the service elevator, and Weber's boss made references to the IDHR litigation. Novak interpreted their actions on September 5, 2007, as retaliatory. The remainder of the allegations in the Federal Novak Litigation pertain to incidents occurring after September 5, 2007.

¶ 138   As such, because the remaining pending claims in the underlying pleadings did not assert claims based on conduct occurring during the effective dates of the American Automobile policy,

there was no coverage under the policy. Because no genuine issue of material facts as to coverage exists, American Automobile was entitled to judgment on the pleadings under section 2-615(e). *Hooker*, 2016 IL 121077, ¶ 21.

¶ 139   ii. Late Notice Defense

¶ 140   SPCA next argues, even if the remaining underlying allegations fell within the policy period, the circuit court incorrectly determined that, as a matter of law, SPCA failed to provide the required notice pursuant to the American Automobile policy's terms.

¶ 141   A notice requirement in an insurance liability policy "is not a mere technical requirement"; rather, it is "a valid condition precedent to the triggering of the insurer's contractual duties." *Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.,* 313 Ill. App. 3d 457, 464 (2000). "Where the insured fails to comply with a notice provision, the insurer will be relieved from its duties to defend and indemnify under the policy." *Id.* A notice of suit requirement allows the insurer an opportunity to investigate the claim, discover facts bearing on coverage, and participate in the defense. *Id.* at 464-65.

¶ 142   The American Automobile policy required the insured to provide notice of a claim or suit "as soon as practicable," and "see to it that we receive written notice of the claim or suit as soon as practicable," "[i]mmediately record the specifics of the claim or suit and the date received," and "[i]mmediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or suit."

¶ 143   "Under Illinois law, a provision calling for the insured to provide notice of a suit 'as soon as practicable' requires notification be made within a reasonable time." *Northbrook Property & Casualty Insurance Co.,* 313 Ill. App. 3d at 465. Whether notice was given within a reasonable

time "depends on the facts and circumstances of each case." *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311-12 (2006). Where the facts are undisputed, a court may determine whether notice was reasonable as a matter of law. *Zurich Insurance Co. v. Walsh Construction Company of Illinois*, 352 Ill. App. 3d 504, 509 (2004).

¶ 144    "The law expects an insured to act diligently when providing notice of a suit to its insurer[.]" *Applied Systems, Inc.*, 313 Ill. App. 3d at 465. A lengthy delay in providing notice is not an absolute bar to claiming coverage applies, as long as the delay was justifiable. *Id.* at 465. The primary consideration in that regard is "the insured's reason for not providing notice within the period of delay at issue." *Id.* at 465-66.

¶ 145    In examining the reasonableness of the insured's notice, the court looks to the following factors:

> "(1) the specific language of the policy's notice provision; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that an occurrence as defined under the terms of the policy has taken place; (4) the insured's diligence and reasonable care in ascertaining whether policy coverage is available once the event has occurred; and (5) any prejudice to the insurance company." *First Chicago Insurance Co. v. Molda*, 2015 IL App (1st) 140548, ¶ 67.

¶ 146    The notice provision here made clear that SPCA was not only obligated to provide notice of a claim "as soon as practicable," but also to "see to it" that American Automobile received written notice of a claim as soon as practicable, that SPCA was to record specific details about any claim, and that SPCA was to "[i]mmediately" send American Automobile copies of any demands or legal documents or pleadings received.

¶ 147   The pleadings demonstrate that SPCA was aware of the Novak Litigation beginning in 2007 and the various pleadings and claims filed thereafter, including the Novak Counterclaims and the Novak Federal Lawsuit, and SPCA does not contend otherwise. SPCA responded to these claims, filed its own lawsuit against Novak, and notified Travelers each time a new claim or amended claim was initiated by Novak.

¶ 148   SPCA justifies its lengthy delay on grounds that it was unsophisticated in insurance matters. However, SPCA's pleadings demonstrate that SPCA was sophisticated enough to notify Travelers of the claims as they were filed, and also notify the other insurers when Travelers withdrew, and institute a counterclaim against them regarding coverage. SPCA was also represented by counsel, specializing in insurance law, starting from the beginning of the Novak Litigation. SPCA also demonstrated its sophistication in insurance matters by the fact that it obtained numerous policies over that span of time from several different insurers and obtained several different types of insurance—commercial general liability, director and officer coverage, and umbrella policies.

¶ 149   SPCA further argues that the delay was justified as SPCA believed, relying on Travelers' representations, that Travelers' coverage was sufficient, and SPCA did not anticipate that Travelers would later withdraw its defense. To the contrary, Travelers specifically and clearly informed SPCA from the outset in its 2007 ROR Letter and subsequent ROR Letters that it was defending under a full reservation of rights, that it could later withdraw its defense upon a determination of no coverage, and that SPCA should take steps to determine if coverage was available under any of its other Policies with other insurers.

¶ 150  Moreover, regardless of SPCA's beliefs about Travelers' coverage and the potential ultimate costs of the Novak Litigation, SPCA was nevertheless beholden to the specific terms and requirements of AISLIC notice provision. See *MHM Services, Inc. v. Assurance Company of America,* 2012 IL App (1st) 112171, ¶ 60 (rejecting insured's argument that it believed it only had to give notice when insured determined it was "reasonably likely" to implicate excess coverage, as insured "was not contractually entitled to exercise discretion as to whether to give notice" and must follow the specific terms of the notice provision in the policy, which required notice of every claim or suit "as soon as practicable.")

¶ 151  SPCA would also have us conclude that its notice was reasonable because it diligently pursued other coverage when Travelers informed SPCA that it was withdrawing its defense in October 2017. We note that Novak filed the first claim against SPCA in 2007 with the IDHR Claim. Novak filed the initial Novak Counterclaim in 2009 and filed the Novak Federal Lawsuit in 2013. SPCA was indisputably aware of each claim. American Automobile contends that SPCA first notified it of these lawsuits on November 19, 2018, a delay of over ten years since the 2007 IDHR Claim, nearly 10 years for the Novak Counterclaim, and five years for the Novak Federal Lawsuit, and a year and a half after SPCA notified its other insurers. As the circuit court observed, it is clear from SPCA's pleadings that it did not provide any notice to American Automobile any earlier than October 4, 2017. The American Automobile policy required notice of a claim or suit "as soon as practicable" after the claim was brought, not "as soon as practicable" after SPCA was informed that any other insurance policy coverage was exhausted. SPCA has pointed to no case law finding such a long delay in providing notice "reasonable" under the circumstances. Moreover,

SPCA also failed to comply with the notice provision's requirements that it immediately send AISLIC copies of any legal documents or pleadings it received.

¶ 152   SPCA contends that American Automobile was not prejudiced by the delay. After missing out on more than a decade of litigation before American Automobile was made aware of the Novak Litigation, American Automobile was deprived of any opportunity to influence selection of counsel, meaningfully investigate the claims as they occurred, participate in their defense, or shape overall legal strategy involving numerous lawsuits. This undoubtedly weighs in favor of finding the notice unreasonable.

¶ 153   Accordingly, we find that, even if the remaining underlying allegations occurred within the policy's effective dates, SPCA failed to provide the required notice under the American Automobile Policy, and, consequently, American Automobile's contractual duties were not triggered, SPCA is not entitled to coverage, and the circuit court properly granted judgment on the pleadings as to count VII of the SATC, in addition to American Automobile's first affirmative defense and count VI of American Automobile's counterclaim).

¶ 154   iii. Estoppel

¶ 155   SPCA also argues on appeal that, as set forth in count VIII of SATC, American Automobile is estopped from asserting any policy defenses because it failed to take action to adjudicate its coverage dispute or defend under a reservation of rights. *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 716.

¶ 156   Here, American Automobile did, in fact, attempt to adjudicate the coverage issue promptly after it was notified of the Novak Litigation. American Automobile filed a declaratory action in federal court in March 2019. American Automobile also filed an answer and counterclaim in

December 2019 in state court after SPCA filed its third-party action against it in the instant case. SPCA has not shown any delay on American Automobile's part in pursuing an adjudication regarding coverage under the circumstances.

¶ 157    SPCA contends that AISLIC was obligated not just to file a declaratory action, but to actually *secure* a judgment, in order to avoid estoppel, citing *Massac County v. U.S. Fidelity & Guaranty Co.*, 113 Ill. App. 3d 35, 41 (1983) ("[i]t is the duty of an insurer to *secure* a declaratory judgment determination of its obligations and rights under the policy [citation], not to take action to prevent such a conclusive and binding determination from being obtained." (Emphasis in origina).) However, that case is distinguishable because the insurer refused to take any action at all for two years after being notified of the claim. *Id.* 37-38.

¶ 158    American Automobile promptly filed its own declaratory action, an answer, a counterclaim, and motions to dismiss in an effort to obtain a judicial determination regarding coverage. See *Certain Underwriters at Lloyd's, London v. Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 22 (Finding that the insurer "timely sought a declaratory judgment regarding its contractual obligation to [insured] when [it] filed an answer and affirmative defenses seeking a declaration in [its] favor. It was not necessary for [insurer] to initiate a separate declaratory judgment action."). And, as we previously observed, SPCA filed its third-party complaint within 30 days after Travelers advised it coverage was exhausted, and an insurer is not obligated to win "a race to the courthouse" in order to avoid estoppel. *Central Mutual Insurance,* 2014 IL App (1st) 133145, ¶ 22 (quoting *Korte Construction*, 322 Ill. App. 3d at 458).

¶ 159    Moreover, estoppel applies only where the insurer breached its duty to defend, and we have determined that American Automobile did not breach any duty to defend here. *Schuster*, 2015 IL

App (1st) 140718, ¶ 29. Accordingly, American Automobile was entitled to judgment on the pleadings as to count VIII of the second amended third-party complaint.

¶ 160    iv. Section 155

¶ 161    SPCA lastly contends that the circuit court erred in granting judgment on the pleadings on its section 155 claim in count IX of the SATC. 215 ILCS 5/155 (West 2020). However, SPCA supports its claim with similar reasoning to its other section 155 claims against other third-party defendant insurers. SPCA's conclusory allegations regarding American Automobile did not establish any vexatious or unreasonable conduct. Having determined that there is no coverage available under the American Automobile Policy, it is apparent that a *bona fide* dispute as to coverage existed and the circuit court properly granted judgment on the pleadings as to SPCA's section 155 claim. *Uhlich Children's Advantage Network,* 398 Ill. App. 3d at 723; *Scudella,* 174 Ill. App. 3d at 253; *Dominick's Finer Foods*, 2018 IL App (1st) 161864, ¶ 94.

¶ 162                                    E. Harleysville

¶ 163    SPCA next challenges the circuit court's order granting Harleysville's motion to dismiss counts X (breach of contract), XI (estoppel), and XII (section 155 claim) of the SATC pursuant to sections 2-615 and 2-619(a)(9) (735 ILCS 5/2-615, 5/2-619(a)(9) (West 2020).

¶ 164    i. Estoppel

¶ 165    On appeal, SPCA first contends, similar to its estoppel claims against other insurers, that Harleysville is estopped from asserting policy defenses because it failed to defend SPCA under a reservation of rights or file a declaratory judgment action regarding coverage. *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 716.

¶ 166   SPCA's pleadings demonstrate that that (1) Travelers notified SPCA on October 4, 2017, that coverage had been exhausted and it was withdrawing its defense, (2) SPCA then notified Harleysville of the claims for the first time, and (3) SPCA filed its third-party complaint in the Federal Coverage Action on October 31, 2017, against Harleysville and other insurers. Even assuming that SPCA notified Harleysville on the same day that Travelers notified SPCA that it was withdrawing its defense, less than 30 days elapsed before SPCA instituted its own coverage action against Harleysville. Because Harleysville had no reasonable opportunity to file its own declaratory action before SPCA filed its action, Harleysville could not be estopped from asserting policy defenses for failure to file its own declaratory action, even assuming a duty to defend existed.

¶ 167   SPCA contends that Harleysville "did nothing" for three years and, like its estoppel arguments, *supra*, again relies on *Massac County,* 113 Ill. App. 3d at 41. As stated, it is not necessary for an insurer to win "a race to the courthouse" in filing a declaratory action (*Korte Construction*, 322 Ill. App. 3d at 458) or initiate its own declaratory judgment action where an insured has already filed one (*Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 22; *L.A. Connection*, 363 Ill. App. 3d at 263). Far from doing nothing, Harleysville participated in SPCA's action and filed motions to dismiss in an effort to obtain a judicial determination on the coverage issue.

¶ 168   Accordingly, the circuit court properly dismissed SPCA's estoppel claim. Harleysville did not waive its right to assert coverage defenses, including the notice defense, in failing to file its own redundant declaratory judgment action or beat SPCA to the courthouse.

¶ 169   ii. Notice Defense

¶ 170   SPCA next contends in a single, conclusory paragraph, citing its arguments made on the same issue with respect to other third-party defendant insurers, that its notice to Harleysville was reasonable under the circumstances and raised issues of fact precluding dismissal.

¶ 171   Harleysville asserted in its section 2-619 motion to dismiss SPCA's breach of contract claim that there was no breach because, as a matter of law, SPCA failed to comply with the notice provision of the Harleysville Policy. The notice provision here was similar to the notice provision in the American Automobile Policy. It provided that the insured must notify Harleysville "as soon as practicable" of an occurrence which may result in a claim or if a claim or suit is brought against the insured. The policy provided that the insured "[m]ust see to it that we receive written notice of the claim *** as soon as practicable," and the insured must "[i]mmediately send us copies of any demands, notices, summonses, or legal papers received in connection with a claim or 'suit.' "

¶ 172   As previously explained, a notice provision calling for notice "as soon as practicable" requires notification within a reasonable time, which depends on the facts and circumstances of the case. *Northbrook Property & Casualty Insurance Co.,* 313 Ill. App. 3d at 465; *Livorsi Marine, Inc.*, 222 Ill. 2d at 311-12. In examining the reasonableness of an insured's delayed notice, we consider the language of the notice provision, the insured's sophistication in insurance matters, the insured's awareness of an occurrence under the policy, the insured's diligence in determining coverage, and any prejudice to the insurer. *Molda*, 2015 IL App (1st) 140548, ¶ 67.

¶ 173   For similar reasons we set forth in rejecting SPCA's arguments that it provided reasonable notice in accordance with the American Automobile Policy, we also find that SPCA failed to provide reasonable notice of the Novak Litigation to Harleysville. SPCA's pleadings show it was aware of the Novak Litigation starting in 2007, including the 2009 Novak Counterclaims and the

2013 Novak Federal Lawsuit, and SPCA does not contend otherwise. SPCA litigated these claims through its attorney and notified Travelers each time a new claim was filed, but it did not notify Harleysville of any claims until October 2017, at the earliest.

¶ 174  As we previously concluded, SPCA's pleadings demonstrate that it was sophisticated enough to notify Travelers of every claim as they were filed, it was represented by counsel from the outset, and it obtained numerous insurance policies over the years from different insurers and involving different types of coverage. SPCA's pleadings also demonstrate that Travelers informed SPCA from the outset in the 2007 ROR Letter and repeatedly in other letters that it was defending under a full reservation of rights, that it could later withdraw its defense upon a determination of no coverage, and that SPCA should take steps to determine if coverage was available under any of its other policies with other insurers, and Morin advised SPCA of the current level of depletion of the Travelers' coverage limit. And, regardless of Travelers' conduct, SPCA was nonetheless obligated under the terms of the Harleysville Policy to provide notice of any claims as soon as practicable. Lastly, SPCA has cited no case law finding that such a long delay (ranging from 10 years for the 2007 IDHR Claim and 4 years for the Novak Federal Action) in notifying an insurer of a claim was reasonable under the circumstances. The delay deprived Harleysville of any opportunity to investigate these claims or participate in the defense strategy until several years after the claims were initiated and well underway.

¶ 175  Accordingly, as a matter of law, SPCA failed to provide notice as required by the Harleysville Policy. Harleysville's contractual duties under the policy were consequently not triggered. As such, SPCA is not entitled to coverage under the Harleysville Policy, and the circuit court correctly dismissed count X with prejudice.

¶ 176   iii. Section 155 Claim

¶ 177   Lastly, SPCA asserts that, as in its other section 155 arguments, *supra*, Harleysville engaged in "vexatious and unreasonable" delay regarding SPCA's claim, and the circuit court erred in dismissing count XII. SPCA's conclusory allegations did not establish any vexatious or unreasonable conduct by Harleysville. And, as we previously held, an insured cannot prevail on a section 155 claim where there is a *bona fide* dispute over coverage (*Uhlich Children's Advantage Network,* 398 Ill. App. 3d at 723), and asserting legitimate policy defenses to coverage do not give rise to a section 155 claim (*Scudella,* 174 Ill. App. 3d at 253; *Dominick's Finer Foods*, 2018 IL App (1st) 161864, ¶ 94). Here, a *bona fide* dispute as to coverage existed and the circuit court properly granted judgment on the pleadings on SPCA's section 155 claim as a matter of law.

¶ 178                                F. Steadfast

¶ 179   In its next issue on appeal, SPCA contends that the circuit court erred in granting Steadfast's motions to dismiss and for judgment on the pleadings.

¶ 180   i. Estoppel

¶ 181   On appeal, SPCA first argues that the circuit court erred in concluding that Steadfast was not estopped from raising policy defenses to coverage on grounds that Steadfast promptly filed a declaratory judgment action.

¶ 182   Here, Steadfast filed its state court declaratory judgment action on October 13, 2017, after Travelers informed SPCA on October 4, 2017, that its coverage was exhausted and SPCA notified its other insurers. SPCA argues, like its estoppel arguments*, supra*, that Steadfast's filing of a declaratory judgment action was insufficient to avoid estoppel as it did not actually *secure* a judgment, again citing *Massac County*, 113 Ill. App. 3d at 41. Essentially, SPCA is arguing that,

despite filing its declaratory judgment action less than two weeks after SPCA notified it of the Novak Litigation, Steadfast should be estopped from asserting policy defenses because SPCA then brought Steadfast into the Federal Coverage Action on October 31, 2017, staying Steadfast's state court action, and Steadfast objected to being improperly joined and requested discovery. Under the circumstances, it is beyond dispute that Steadfast took prompt action to avoid the application of estoppel by filing a declaratory action to determine coverage and then litigating the declaratory action filed against it in the federal forum. *Uhlich Children's Advantage Network*, 398 Ill. App. 3d at 716.

¶ 183   Accordingly, the circuit court properly granted Steadfast's motion for judgment on the pleadings as to SPCA's estoppel claim.[7]

¶ 184   ii. Continuing Claims Exclusion

¶ 185   SPCA also asserts on appeal that the "continuing claim exclusion" in the Steadfast Policy does not apply because the language is "hopelessly ambiguous" and because the claims alleged by Novak in his 2007 IDHR Claim were distinct, different instances of discrimination from the claims made in the 2009 Novak Counterclaims.

¶ 186   When construing a provision in an insurance policy that excludes or limits coverage, we read it narrowly; "the applicability of the exclusion [provision] must be clear and free from doubt." *Nationwide Property & Casualty Insurance Co. v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210267, ¶ 25. "[T]he insurer bears the burden of affirmatively demonstrating that a claim falls within an exclusion." *Id.*

---

[7] We note that SPCA does not raise its waiver argument on appeal.

¶ 187    Steadfast contended in its declaratory judgment action that there was no coverage available based on the "continuing claim exclusion" in the policy as the Novak Litigation constituted one continuing claim of discrimination and retaliation beginning with the filing of the 2007 IDHR Claim. The continuing claims exclusion provides:

> "[t]his policy does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury,' arising out of any claim against the insured which is alleged to be continuing in nature if the damage or any part of it was known prior to the effective date of this policy. This exclusion will apply whether or not the cause of the damage was known prior to the effective date of this policy. In no event will this policy apply to any lawsuit against the insured if the filing date of the original complaint was prior to the effective date of this policy, whether or not the insured was a party ***."

¶ 188    SPCA contends that the language "continuing in nature" is ambiguous, citing *Doe,* 234 Ill. App. 3d at 134. We do not find *Doe* applicable here. *Doe* involved entirely different language— the interpretation of the term "related acts" in the policy at issue there. The "continuing claim" provision here unambiguously provides that there is no coverage for claims alleged to be "continuing in nature" if any part of the damage was known prior to the policy's effective date. The Steadfast Policy became effective on May 1, 2008.

¶ 189    The 2007 IDHR Claim alleged housing discrimination in that SPCA failed to reasonably accommodate Novak's hearing disability by refusing to provide CART services at board meetings. The Novak Counterclaims alleged retaliation against Novak for filing the 2007 IDHR Claim; additional incidents from 2007 to 2009 of failing to provide reasonable accommodations for his disability, such as refusing to provide CART services or recognize that his dog was a service dog;

and harassing and retaliatory behavior in enforcing SPCA condominium rules unfairly due to Novak's complaining about SPCA's discriminatory and harassing behavior. The 2010 IDHR Claim alleged retaliation for prior housing discrimination complaints and discrimination based on Novak's disability in continuing to refuse to provide CART services or recognize Novak's dog as a service dog. The 2013 Novak Federal Lawsuit specifically alleged "continuous discriminatory and retaliatory conduct against the Novak family since" the filing of the 2007 IDHR Claim, retaliation for filing the 2007 IDHR Claim, continued refusal to reasonably accommodate his disability in failing to provide CART services or recognize his service dog. It reiterated allegations of incidents appearing in the Novak Counterclaims and 2010 IDHR Claim, and alleged new incidents of discrimination and harassment occurring through January 2013.

¶ 190   Considering these underlying Novak claims together, it is apparent that they were "continuing in nature." The Novak Litigation alleged that SPCA engaged in continual and repeated incidents of housing discrimination based on his disability, harassing behavior related to SPCA's condominium rules, and retaliatory conduct for filing the 2007 IDHR Claim, over a period of many years. Moreover, based on SPCA's pleadings, it is apparent that, before the policy's inception on May 1, 2008, SPCA was aware of the 2007 IDHR Claim filed more than one year before, on April 13, 2007. As such, Steadfast is entitled to judgment on the pleadings as to count II of its complaint.

¶ 191   iii. Notice Provision

¶ 192   SPCA next finds fault with the circuit court's determination that, as a matter of law, SPCA failed to provide notice as required by the Steadfast Policy, thereby failing to trigger Steadfast's contractual duties and entitling Steadfast to judgment on the pleadings as to count III of its complaint.

¶ 193    The notice provision in the Steadfast Policy provided, *inter alia*, that if a claim or suit was brought against the insured, "written notice *** shall be given to us within 15 days or as soon as practicable thereafter."  If a claim was made or suit was brought, the insured "must immediately record the specifics of the claim or 'suit' and the date received and see to it that we receive prompt written notice of the claim or 'suit.' " Further, the insured "must *** [i]mmediately send us copies of any demands, notices, summonses, or legal papers received[.]"

¶ 194    Thus, the notice provision required SPCA to provide written notice of a claim or suit to Steadfast *within 15 days or as soon as practicable*. A provision requiring notice "as soon as practicable" means "a reasonable time." *Northbrook Property & Casualty Insurance Co.,* 313 Ill. App. 3d at 465; *Livorsi Marine, Inc.*, 222 Ill. 2d at 311-12. In examining the reasonableness of an insured's delayed notice, we consider the language of the notice provision, an insured's sophistication in insurance matters, an insured's awareness of an occurrence under the policy, the insured's diligence in determining coverage, and any prejudice to the insurer. *Molda*, 2015 IL App (1st) 140548, ¶ 67.

¶ 195    SPCA refers to its prior arguments against other insurers' notice provisions. For similar reasons we set forth in rejecting these arguments, *supra*, we also find that SPCA failed to provide reasonable notice of the Novak Litigation and various claims therein to Steadfast. The pleadings demonstrate that SPCA was sufficiently sophisticated in insurance matters. The prolonged delay deprived Steadfast of an opportunity to investigate the claims as they occurred or participate in the defense until several years after they were initiated. SPCA's pleadings establish that SPCA was indisputably aware of all the Novak claims filed against it in 2007, 2009, 2010, and 2013. SPCA did not provide any notice to Steadfast until October 2017, a delay of between ten years to four

years from the inception of the Novak Litigation to the final claim filed in federal court, far outside both the 15-day requirement and "as soon as practicable" requirement.

¶ 196    Accordingly, as a matter of law, SPCA failed to provide notice as required by the Steadfast Policy. Steadfast's contractual duties under the policy were consequently not triggered. *Applied Systems, Inc.,* 313 Ill. App. 3d at 464. As such, SPCA was not entitled to coverage under the Steadfast Policy, and the circuit court correctly granted judgment on the pleadings as to Steadfast's count III in its complaint.[8]

¶ 197    iv. Section 155 Claim

¶ 198    In asserting the circuit court erred in granting Steadfast's motion to dismiss as to SPCA's section 155 claim, SPCA refers this court to its prior arguments related to other insurers, *supra*. Having determined that there is no coverage available under the Steadfast Policy, it is apparent that a *bona fide* dispute as to coverage existed and the circuit court properly granted Steadfast's motion to dismiss. *Uhlich Children's Advantage Network,* 398 Ill. App. 3d at 723; *Scudella,* 174 Ill. App. 3d at 253.

¶ 199                                   E. Strathmore

¶ 200    In its final argument on appeal, SPCA argues that the circuit court improperly granted Strathmore's motion for judgment on the pleadings pursuant to section 2-615(e) as to SPCA's claims against it in the SATC.

¶ 201    i. Estoppel

---

[8] We observe that the circuit court also found Steadfast was entitled to judgment on the pleadings as to count I of SPCA's first amended counterclaim (asserting breach of contract) on grounds that it had already found there was no coverage under the policy. It also found Steadfast was entitled to judgment on the pleadings on SPCA's third and fourth affirmative defense, which SPCA does not contest on appeal.

¶ 202   On appeal, SPCA asserts, similar to its previous estoppel arguments, *supra*, that because Strathmore never filed its own declaratory judgment action or a counterclaim to resolve the coverage issue, it should be estopped from asserting any defenses to its coverage obligations.

¶ 203   SPCA's pleadings establish that it notified Strathmore of the Novak Litigation in October 2017 after Travelers advised SPCA in an October 4, 2017, letter that its coverage had been exhausted. Shortly thereafter, SPCA filed its counterclaim in the Federal Coverage Action on October 31, 2017, bringing Strathmore into the federal litigation. After the federal proceedings were dismissed and SPCA filed its third-party complaint in the state court proceeding, Strathmore filed a motion for judgment on the pleadings on August 21, 2020.

¶ 204 Similar to the circumstances of other insurers discussed, *supra*, Strathmore had no reasonable opportunity to file its own declaratory action before SPCA filed one. As such, Strathmore is not estopped from asserting policy defenses merely because it failed to file its own redundant declaratory action or counterclaim, even assuming a duty to defend existed. As stated, it is not necessary for an insurer to win "a race to the courthouse" (*Korte Construction*, 322 Ill. App. 3d at 458) or initiate its own declaratory judgment action where an insured has already filed one (*Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 22). Strathmore participated in SPCA's coverage action and filed a motion to dismiss in an effort to obtain a judicial determination on the coverage issue, and did, in fact, secure a judgment on the merits of that issue. *L.A. Connection*, 363 Ill. App. 3d at 263 ("the initiation of a declaratory judgment action by the *insured,* rather than the insurer, is sufficient to avoid estoppel. *** '[i]t is the fact of the proceeding itself, and not the identity of the party initiating the proceeding, that is of legal import." (Internal quotation marks omitted) (Emphasis in original).

¶ 205  Accordingly, the circuit court properly entered judgment on the pleadings as to SPCA's estoppel claim against it.

¶ 206  ii. Notice

¶ 207  SPCA also contends that its notice to Strathmore was reasonable and the circuit court erred in entering judgment on the pleadings in that regard.

¶ 208  Like other policies involved in this case, Strathmore's notice provision provided that if a claim is made or suit is brought, the insured "must ***[i]mmediately record the specifics of the claim or 'suit' and the date received; and *** [n]otify us as soon as practicable." Thus, SPCA was required to notify Strathmore within a reasonable time, given the facts and circumstances. *Northbrook Property & Casualty Insurance Co.,* 313 Ill. App. 3d at 465; *Livorsi Marine, Inc.*, 222 Ill. 2d at 311-12.

¶ 209  For reasons we explained, *supra*, we similarly conclude here that SPCA failed to provide reasonable notice of the Novak Litigation and various claims therein to Strathmore. SPCA's pleadings show it was aware of the Novak Litigation starting in 2007 and each new claim thereafter, and SPCA does not contend otherwise. SPCA notified Travelers each time a new claim was filed, but it did not notify Strathmore of any claims until October 2017, at the earliest. SPCA's pleadings demonstrate that it was sufficiently sophisticated in insurance matters and that Travelers advised SPCA that it was defending under a reservation of rights and to investigate whether other insurers' policies provided coverage. The delay deprived Strathmore of any opportunity to investigate these claims or participate in the defense until several years after the claims were initiated.

¶ 210   SPCA has failed to sufficiently plead that its notice was reasonable considering the circumstances. *Molda*, 2015 IL App (1st) 140548, ¶ 67. Accordingly, as a matter of law, SPCA failed to provide notice as required by the Strathmore Policy. Strathmore's contractual duties under the policy were not triggered. As such, SPCA is not entitled to coverage under the Strathmore Policy as a matter of law, and the circuit court correctly entered judgment on the pleadings.

¶ 211   iii. Section 155 Claim

¶ 212   In its final argument on appeal, SPCA contends that the circuit court erred in granting judgment on the pleadings with respect to its section 155 claim of the Illinois Insurance Code. The circuit court did not directly address this count, but it did grant Strathmore's motion for judgment on the pleadings as to all counts against Strathmore in the SATC, which included the section 155 claim.

¶ 213   SPCA again refers to its prior arguments in support of this contention. Having determined that there is no coverage available under the Strathmore Policy, it is apparent that a *bona fide* dispute as to coverage existed and the circuit court properly granted judgment on the pleadings as a matter of law. *Uhlich Children's Advantage Network,* 398 Ill. App. 3d at 723; *Scudella,* 174 Ill. App. 3d at 253; *Dominick's Finer Foods*, 2018 IL App (1st) 161864, ¶ 94.

¶ 214                                   III. CONCLUSION

¶ 215   For the reasons stated, we affirm the judgment of the Cook County circuit court.

¶ 216   Affirmed.